## WARREN VS. PAFF.

*In the matter of the Estate of* JOSEPH DELACROIX, *deceased.*

ON a decree upon final accounting, the claims of creditors having been liquidated, and the funds found in the executors' hands directed to be paid rateably among the claimants,—*Held*, that the decree was no bar to a plea of the statute of limitations by parties interested in the testator's real estate, against the portions of the debts not discharged by the dividend directed to be paid on the final accounting.

Heirs and devisees may plead the statute against claims sought to be enforced against the real estate of the deceased.

Where the will contained a direction to sell the testator's real estate and distribute the proceeds among certain legatees, and the creditors failed to enforce this provision, or to take measures to have the lands sold by order of the Surrogate,—*Held*, that when the power had been exercised and the land converted into money, long after the debts had been barred by the statute, this fund did not constitute new assets in regard to which a remedy remained to the creditors.

The statute of limitations may be interposed by the executors, or by either of them, or by any party interested in the fund.

The statute begins to run against a demand when the cause of action accrues, either in the lifetime of the intestate or testator, or after his death.

What is the effect of a Surrogate's decree liquidating the debt, but not directing payment—*Quære.*

Lands vested in the deceased debtor are assets at the time of his death, and as to them the statute begins to run from the time the compulsory remedy afforded by the statute for their sale, can first be invoked; that is, eighteen months after the grant of letters, or when an account of the personal estate has been rendered.

The statute begins to run against legatees whose bequests are made payable out of the proceeds of real estate directed to be sold by the executors, from the time the executors execute the power. The act of the executors prevents their denial that the trust continues, and the duties consequent upon an exercise of the trust, will be enforced against the trustee, within the statutory period after the performance of the fiduciary act.

I. D. Sherwood, *for Claimants.*

I. The statute of limitations does not specify the time in which a creditor may institute proceedings before the Surrogate to obtain payment of his debt.

The only case in which the statute of limitations may be pleaded in proceedings in the Surrogate's Court, is upon an application by executors or administrators to sell or mortgage real estate for the payment of debts. (*Sect.* 10, *tit.* 4, *ch.* 6, *Part II.*) The provision allowing the statute of limitations to be pleaded as a bar in a specific case, excludes the idea that the statute may be set up as a bar in any other.

This view of the provision is not in conflict with any decision prior to the revision of 1830.

The case in 6 *Johns. C. R.*, 360, did not, it is submitted, decide that the statute of limitations could be pleaded by an heir in opposition to an application to sell or mortgage real estate, but merely held that the discretion of the Surrogate could be exercised in restricting such application within a reasonable period.

· If the decision were otherwise, it was never followed, and was expressly disapproved in *Gilchrist* vs. *Rea*, (9 *Paige*, 66.)

In the subsequent case of *Jackson* vs. *Robinson*, (4 *Wend.*, 436,) Judge Marcy sustained the order of a surrogate for the sale of lands, where there was an interval of fourteen years between the granting of letters and the application of the administrator.

Judge Marcy says: " The law fixes no definite time within which the proceedings must be commenced. The time is left to the discretion of the Surrogate."

The ground upon which it was held in the cases before

the Revised Statutes, that applications for the sale of real estate, for the payment of debts, must be made within a reasonable time, was not because of the statute of limitations; but because, as is said in the opinion of Willard, Surrogate, in *Gilchrist* vs. *Rea*, the legislature could not have intended that the real estate should be embarrassed in the hands of the heirs or devisees, by continuing liens.

This reasoning has no applicability to an application by a creditor for the payment of his claim out of assets actually in the hands of executors. The section of the Revised Statutes before referred to, it is submitted, contains the only provision authorized by law, for the plea of the statute of limitations in any proceedings in the Surrogate's Court.

II. If, however, the statute of limitations is applicable, it is only so by analogy. It is submitted, then, that by analogy the presenting of the claim of the petitioner to the executor in 1842, was the commencement of an action which took the case out of the statute. It is also submitted that the statute does not run at all while the estate is in the course of settlement.

The executors, with all claims against the estate, are before the court, and so remain until the assets are all disposed of and the final decree entered. So long as there are any assets in the hands of the executors properly applicable to the payment of debts, the statute does not run as to such claims as have been presented, or in other words, upon which actions have been instituted before the Surrogate. The action on this claim was commenced in 1842, within the statutory limitation, and is to be regarded as a pending action until the final disposition of the assets. (*Farrington* vs. *King*, 1 *Bradford*, 182.)

III. If the statute of limitations is applicable by analogy, then it is contended that on the same principle the decree of the Surrogate in 1842, establishing the validity of the claim of petitioner, was analogous to a judgment, and that the statutory limit in cases of judgment is applicable here.

The statute of limitations being applied, not by reason of any specific terms contained in the statute, but simply by analogy, there is an eminent propriety in giving to the claim, the benefit of the construction contended for.

The decree of the Surrogate was therefore a judgment. (See *sec.* 90 *of Code, subd.* 1.)

HAWLEY *and* GLOVER, *for Legatees.*

The petitioner's claim is barred by the statute of limitations.

· I. More than six years have elapsed since the entering the decree of the Surrogate, referred to in the petition, and the· six years' statute applies to the decrees of the Surrogate's Court. (*Paff* vs. *Kinney,* 1 *Brad., page* 1.)

It is within the spirit, if not the letter, of the case of *Ferguson* vs. *Broome,* (1 *Brad., p.* 10.)

The theory of the petitioner is, that the fund from which payment is sought, is new assets: this we deny. The land was assets, as much as the money received for the same. (*Jacobs' Law Dictionary, tit. Assets.*)

There has been no suspension of the right of the petitioner, to apply to have these lands sold for the payment of his debt. He could have taken measures for that purpose, at any time within six years from the entering of that decree, just as well as he now asks to have the money so applied.

There is nothing in the idea, that this matter has been all this while pending in court. The decree entered was a final decree. There was no reservation of any question for the further order or direction of the Surrogate, and the creditor could at once have filed a transcript in the county clerk's office, and issued execution. It might as well be claimed, that every judgment that settles the rights of parties, and orders one to pay the other, is a matter still pending in court until paid. ˙ The Surrogate has already decided, in *Paff*

*vs. Kinney, supra,* that the statute of limitations did run as to part of that decree. Would it not be an anomaly to say that the statute applies to part of a decree and not to all. The petitioner founds his claim solely on the decree.

Though the will does direct the executors to sell the real estate, thereby making it personalty, that cannot help the petitioner's claim. It was held under the old law in England, that charges on personal estate did not prevent the statute of limitations from running. (*Angell on Lim., p.* 165, 166.)

At any rate, the ten years' statute would apply. (*Elwood vs. Deifendorf,* 5 *Barb. R.,* 398.)

II. Ever since 1848, there have been personal assets in the hands of Kinney, one of the executors, applicable to the payment of this claim. It cannot be, that if there have been funds which might have paid a creditor, but as to which the statute of limitations applies, that he is entitled to come in, and claim on other assets, on the plea that they are newly discovered, and thus prevent the statute from being a bar. When the statute has once attached to a creditor's claim as to part of the assets of an estate, it must attach as to all; it would be unjust to the other parties in interest in this estate, to permit the petitioner to be paid from proceeds of the land, when his own laches has prevented his being paid from the personal assets, which personal assets are thus entirely lost to the estate.

THE SURROGATE.—The testator died in the year 1839, and his will was proved shortly after his decease. The executors were authorized and directed to sell the real estate of the testator, but this power was never exercised until the year 1856. In March, 1842, there was a final accounting by the executors before the Surrogate, and the personal estate being insufficient to pay all the debts, a dividend was declared, and the surplus remaining in the hands of the executors, after discharging the expenses of administration, was directed to be paid and dis-

tributed among the creditors. The decree provided, that on these payments being made, the executors should be discharged from their official duties and liabilities. Warren & Kiersted were named in the decree as creditors, and they received their dividend. They now apply for payment of the remainder of their claim out of the proceeds of the real estate lately sold by the executors, as directed by the will, and the statute of limitations is pleaded in bar by one of the executors, and also by parties interested in the proceeds of the real estate.

It is manifest that before the execution of this power and direction to sell, the creditors having valid demands against the estate could have applied to the Surrogate for the sale of the testator's real estate, for the payment of his debts. Before the year 1830, the heirs or devisees could have pleaded the statute of limitations against such an application. This was the rule in equity—the Revised Statutes converted this equitable privilege into a statutory right. It is clear, therefore, that if a proceeding were now pending on the part of creditors of the testator to sell the lands, the statute of limitations would be a good defence against the application.

If, on the other hand, we are to treat the direction to sell, contained in the will, as a conversion of realty into personalty, then it is obvious, that for all purposes of administration, this conversion is to be considered as made at the testator's decease, although not actually effectuated until the sale took place. In that view the creditors could have compelled the execution of the power at any time after the testator's death, before their claims were barred by the statute. In either case the creditors possessed an adequate and efficient remedy, which they failed to pursue. The demand now presented is over eighteen years old, and fifteen years have elapsed since the entry of the Surrogate's decree on the final accounting of the executors.

I am of opinion, that if the statute of limitations apply, it may be interposed by the executors, or either of them, or by any party interested in the fund. · (*Shewen* vs. *Vanderhrost*, 1 *Russ. & M.*, 349; 2 *Russ. & M.*, 75.)

The statute begins to run against a demand when the cause of action accrues, either in the lifetime of the intestate or testator, or after his death. The period of eighteen months after the grant of letters testamentary or letters of administration, is not counted as part of the statutory limitation. The remedy of the creditor is by suit against the executor or administrator, in a court of law, or by an application to the Surrogate for a decree, liquidating the claim. A judgment, when recovered at law, is only conclusive as an adjudication of the liability of the estate. Execution cannot issue without the permission of the Surrogate, which will not be granted, unless the executor or administrator be found in assets. When there is a decree of the Surrogate, liquidating the debt, but ordering only the payment of a dividend, the statute will certainly run against the portion of the demand decreed to be paid ; but what is the effect as to the portion not ordered to be paid in consequence of a deficiency of assets ? In other words, does the statute run against a Surrogate's decree, merely liquidating a debt against the estate ? Such a decree is substantially nothing more than a judicial declaration that the debt shall be paid in due course of administration. Is it necessary, in order to save the statute, to have the debt judicially re-declared every six years, in order to save the remedy in case new assets should be realized ? I am not prepared to assert this doctrine ; the proposition has great difficulties. There certainly can be no decree for payment until assets have been recovered or ought to have been recovered by the representative. In the case of *Paff* vs. *Kinney*, (5 *Sandford's Superior C. R.*, 380,) a controversy arising out of the very estate now under consideration, Justice Parker, of the Court of Appeals, held the following language in reference to assets which accrued in the year 1848·: " We do not see how the defendant can avail himself of the statute of limitations on this demurrer. The statute must be considered as having begun to run at the time when the decree in favor of the corporation was, in fact, satisfied. From that time the amount became assets in the defendant's hands." But, in the present

case, I think we are relieved from the difficulty as to the question of the application of the statute where new assets are realized, by the fact that the funds which the creditors now seek to reach, are the proceeds of lands vested in the testator at the time of his decease. Ever since his death, the lands have been real assets, which the creditors might have had sold for the payment of the debts by the order of the Surrogate; or, if they were to be treated as personal assets, on the ground of the direction for their sale contained in the will, then the creditors might have compelled their application to the discharge of all claims against the estate. To effect either of these results, an adequate remedy existed eighteen months after the grant of letters, and six years having been allowed to elapse without enforcing either of those remedies, the debt, in respect either to the land or its proceeds, is, in my judgment, barred by the statute of limitations. It may be urged that the same objection applies to the claims of the legatees, whose bequests are made payable out of the proceeds of the real estate when sold. Formerly the plea of the statute to an ordinary action for a legacy was unknown, both at common law and in the ecclesiastical courts, and the Court of Chancery refused to adopt the rule, by analogy to the statute, because an executor stands in the relation of a trustee, and whilst the trust subsists, the statute was not permitted to run. (*Angell on Limitations, p.* 95.) Executors, who are precluded from taking beneficially, and administrators claiming merely as such, were not permitted to set up a title to the general residue. Being simply and technically trustees, they could not hold the residue to the exclusion of the parties beneficially interested. (*Angell, p.* 163.) The limitation was not created for the personal convenience of the executor, but for the benefit of the estate of the deceased person and those entitled to it. (*Angell, p.* 187.) Without inquiring how far this rule has become modified by our statute in relation to general legacies, it is sufficient to say, that on the exercise of any trust power contained in a will, granted and exercised only by virtue of the express terms of the will, a right of

action accrues to the *cestui que trust*, interested in the execution of the power. The act of the executor prevents his denying that the trust continues; and the duties consequent upon an exercise of the trust, will be enforced against the trustee, within the statutory period after the performance of the fiduciary act. No such express trust exists in this case with regard to the creditors. The debts are not charged on the real estate, nor its proceeds, but are simply ordered to be paid, without specification of the fund to be applied for that purpose. (*Bloodgood* vs. *Bruen*, 4 *Selden's R.*, 370.) There must be a decree, declaring the claim of Kiersted & Warren barred by the statute of limitations, and directing the proceeds of the lands sold by the executors, to be distributed among the legatees named in the will as beneficiaries of that fund.