CHOLETTE SHARPE, Appellant, *v.* BENJAMIN F. FREEMAN and others, Respondents.

In an action against the widow and children, and also the personal representatives of an intestate, to set aside a deed from such intestate to such widow and children, claimed to be fraudulent as against creditors, and for sale or mortgage of the lands so conveyed, to pay debts, the roll of a judgment recovered by the plaintiff, in an action against the personal representatives of such intestate, upon simple contract debts accrued before his death and before such deed was given, is not competent evidence against such grantees.

Such judgment does not render the claim of the creditor a judgment debt, as to the grantees or heirs-at-law of the intestate.

Nor does such judgment preclude the heirs-at-law from interposing the statute of limitations to the claims upon which it was recovered.

The practice of receiving evidence subject to objection, and reserving the question of its admissibility, on trials before referees, criticised.

(Argued June 14th; decided June 22d, 1871.)

APPEAL from an order of the General Term of the Supreme Court, in the seventh judicial district, affirming a judgment dismissing the complaint, entered upon the report of Sterling G. Hadley, Esq., referee.

The action was brought to set aside a certain conveyance of real estate, by Alvin H. Parks to the defendants, Susan Parks, Ellen Parks, and others, his wife and children, and have the premises declared subject to the debts of the grantor, and that a sale or mortgage be had, and the proceeds applied to the payment of such debts.

The deed was executed in 1854, and was without pecuniary consideration, though the consideration expressed was $500. Alvin H. Parks died intestate in 1856, and the defendants, Freeman, Dickinson and Hiram Parks, and also the widow, Susan Parks, received letters of administration. Before this action was commenced, the administrators had a final settlement before the surrogate, and had paid out, in course of administration, all moneys received by them, as such, and had no property in their hands applicable to the payment of debts. They had paid about $1,900 to the plaintiff, upon a

judgment recovered by him against such administrators, on a reference of his claims, agreed to under the statute.

At the time of his death the intestate was largely indebted to the plaintiff, on notes and book account, a portion of which indebtedness accrued prior to the above mentioned conveyance, and upon this indebtedness the plaintiff's judgment was recovered.

The lands conveyed were of the value of $12,000. The plaintiff's judgment was for $3,831.35. The total indebtedness of the intestate, as allowed by the surrogate, was $30,000, of which the administrators paid nearly $5,000.

The plaintiff made no proof of his debt upon the trial, except by producing the roll of the judgment so entered in his favor against the personal representatives, which was received by the referee, subject to the objections made by the defendants thereto. The judgment was recovered and docketed in 1858. This action was commenced in 1866.

The referee decided that the judgment "did not establish any indebtedness against the widow or heirs-at-law of the real estate held by them;" that the plaintiff had no legal, valid, subsisting debt against the estate, binding on the heirs or widow, or the real estate in their hands; that the plaintiff's claims were barred by the statute of limitations, and that the complaint should be dismissed.

The case below is reported, 2 Lansing, 171.

*Henry R. Selden*, for the appellant, cited *Chautauqua Co. Bank* v. *White* (6 N. Y., 252, 253); *Conro* v. *Port Henry Iron Co.* (12 Barb., 58); 2 Barb. Ch. Pr., 149; *Loomis* v. *Tifft* (16 Barb., 541); *Walker* v. *Devereaux* (4 Paige, 252); 15 John., 380, 381; 3 Cow., 96; *Ball* v. *Miller* (17 How., 300); *Flora* v. *Carbeau* (38 N. Y., 113); *Elsey* v. *Metcalf* (1 Denio, 326); *Stanton* v. *Wetherwax* (16 Barb., 261).

*W. C. Rowley*, for the respondent, cited Willard on Executors, 315, and cases there cited; *Baker* v. *Kingsland* (10 Paige, 360); *Ferguson* v. *Brown* (1 Bradford's Sur. R., p. 10);

*Renwick* v. *Renwick* (1 Bradford's R., 234); *Ball* v. *Ball* (17 How., 308); *Warren* v. *Paff* (4 Bradford R., 260); *Osgood* v. *Manhattan Co.* (3 Cow., 612); *Baker* v. *Kingsland* (10 Paige, 366); *Reynolds* v. *Collins* (3 Hill, 36); *Howell* v. *Babcock* (24 W., 488); *Bucklin* v. *Chapin* (1 Lans., 449); *Wiggins* v. *Armstrong* (2 John. Ch., 145).

Folger, J. When the referee admitted the judgment roll in evidence, "subject to the objections duly made by the defendants' counsel," the record was in evidence for all the legitimate purposes of the action. By receiving the roll in that way, the referee followed a practice which, as we understand, prevails in some parts of the State, in trials before referees. It is understood and agreed between the parties, that the validity of the objection is not at the moment determined. The determination of it is reserved by the referee to be made upon more mature consideration, before the delivering of his report, and his determination thereon to be explicitly stated in his report. If he shall, after the case is submitted, overrule the objection and consider the evidence, the party objecting to it is, by this practice, to have the benefit of an exception. If, on the other hand, he sustains the objection and rejects the evidence, the party offering it is to have the benefit of an exception. Such, we say, is understood to be a practice in some parts of the State. It is one not to be commended, however; for it does not conduce to a clear and accurate trial of the action, nor to an explicit presentation of the questions for review. If the referee, in his report, shall state what he has done in admitting or rejecting the evidence, and it shall appear, without question, in the case as made up, that he has ruled and an exception has been taken to his ruling, such exception may be considered on review. But if, when evidence has been received subject to objection, he shall have afterward either sustained or overruled the objection, and there does not appear in the case any exception by the party aggrieved, it may turn out that the party has no sufficient remedy. This case presents an instance. The

plaintiff offered in evidence a judgment roll; the defendant made several objections; the roll was received subject to those objections. The plaintiff, whose evidence was in fact received, and is incorporated in the case now on appeal, claims that it was not considered by the referee; and one of his points is, that "the referee erred in rejecting the record in evidence against the heirs, after it had once been received in evidence and the cause was submitted to him." But there is nothing to show us that he rejected it in evidence. There is no exception to any rejection of it by him. He has reported, among his conclusions, certain statements as facts, which he could have derived only from the judgment roll. But in his conclusions of law, he makes no deduction from those facts, to the benefit of the plaintiff, as against the grantees of Parks. It is possible that, had a ruling been requested at the hearing, when the testimony was objected to, and it had been made, the plaintiff might have conducted the trial otherwise than he did. But his evidence was admitted. On the other hand, had the referee, receiving the evidence, given to it all the weight which the plaintiff claims for it, the defendant has no exception to its admission. Inasmuch, as a general rule, we are confined in our review to the errors of law, which are presented by exceptions made, it is evident that such a mode of trial of actions is hazardous.

The case is then before us with this evidence in it as the basis of facts found, but with conclusions of law, upon the facts found, adverse to the plaintiff. Did the referee commit any error thereby? We are of the opinion that he would have been right, had he ruled that the roll was not competent evidence against the grantees in the deed from Parks, as such. They were not, nor was either of them, in his own right, a party to that record, or a privy to it. At common-law, a judgment against executors or administrators was not evidence against the heir, nor was it in equity. (Willard on Ex'rs, 315, and case cited.) For there is no privity between the executor and the heir. And though the grantees in the deed were also the widow and the heirs-at-law of Parks, there

is no privity which makes the judgment roll evidence against
them, unless it is made so by statute. The statutes expressly
provide that a judgment, docketed after the death of one
against whom it has been obtained, or against his executors
or administrators, shall not bind his real estate, but shall be
held as a debt to be paid in the course of administration. (2
R. S., 359, § 7; 449, § 12; 355, § 24; 89, § 40.) The sec-
tions of the Revised Statutes do not give any compe-
tency to the records of such judgments, as evidence against
heirs-at-law or grantees. The judgment, the roll of which
was put in evidence in this case, was recovered against
the administrators of Parks, upon a reference agreed to
by them and sanctioned by the surrogate, in pursuance
of the statute. (2 R. S., 89, §§ 36, 37). Chapter 460 of the
law of 1837, provides for the mortgaging, selling or leas-
ing of real estate of a deceased person for the payment of his
debts. But it declares that, where a judgment has been got
against an executor or administrator, the claim shall remain a
debt to the same extent as before, to be established as if judg-
ment had not been obtained. It excludes the idea that the
judgment is evidence against the heir-at-law, or any grantee
of the land, or that the claim assumes the character of a judg-
ment debt. Chapter 172 of the Laws of 1843 added a *pro-
viso* to chapter 460 of 1837, that where such judgment had
been obtained on a trial or hearing upon the merits, it should
be *prima facie* evidence of such debt *before the surrogate.*
This still excludes the idea that it is evidence in any other
court, or that the debt is yet a judgment debt. The heir-at-
law may still contest the validity and legality of the debt,
even on a proceeding before the surrogate, and may set up
the statute of limitations in bar, and that notwithstanding
any admission by the administrator. (2 R. S., 102, § 10.)
There is nothing in the statutes which makes the judgment
roll evidence against these grantees. Nor has the learned
counsel for the appellant suggested to us any other provision
of statute law. He asks, however, " would not a note of the
intestate have been evidence, or a judgment against him ?

Neither would have been conclusive against the fraudulent grantee, but certainly they would be admissible, and *prima facie* evidence of the facts shown by them.   If a judgment against the intestate would be *prima facie* evidence, would not a like judgment against his administrator?   If a note would be evidence, would not a judgment record reciting the note, and in which the note is merged, be evidence?"   The instances put are not analogous.   Where the signature of the intestate to the note is proven, it is the declaration or act of the one with whom the heir is in privity, and the proof is made in an action against the heir, in which he has his day in court.   And so, when the judgment on the note against the intestate is shown, it is a judgment against one with whom the heir is in privity.   That essential is lacking in this judgment.

And though one of the grantees (the widow of Parks) was also a defendant in the action in which the judgment was rendered, the roll of which was put in evidence, she was such in her representative capacity with the other administrators.   As such she might not deny the validity of the claims of the plaintiff, then made against the personal representatives, and yet have a right to deny them when, eight years after, they are set up against her, in her own right, as the alleged fraudulent grantee of real estate.   The plaintiff, in 1857 and 1858, may have had legal claims against the estate of the intestate, which an administratrix could not resist, save by proof of payment or set off.   But when, in 1866, he comes to collect those claims from real estate, which has been conveyed to her by the intestate in his life-time, she may take the position that those claims, which were once enforceable against the administrator, are now barred by the statute of limitations, against heirs-at-law and grantees, and also that, though made the subject of a judgment by provision of statute, they are, by the same statute, precluded from becoming thereby judgment debts.   The learned counsel for the appellant claims, however, that the judgment roll having been received in evidence, though objection was made by the

respondents, it cannot now be claimed that it was incompetent as evidence against them.

It is held, in *Flora* v. *Carbeau* (38 N. Y., 111), that where testimony tending to establish a material fact, although incompetent in its nature, is received without objection, or being objected to, is received, notwithstanding the objection, the party has a right to insist upon the facts shown thereby. Granting the whole force of the authority, the appellant cannot claim that any more was proven by the judgment roll than it was capable of proving. He can only claim that there are established in the action the facts shown thereby. That the roll was admitted in evidence did not make the debts, which were involved in the action in which that judgment was rendered, judgment debts. It did show that, in 1858, the plaintiff was the owner and holder of certain simple contract debts against the intestate, and that, in proceedings under the statute, he had established, against the personal representatives of the intestate, his right to the payment of them from the assets of the estate.

Certainly the plaintiff cannot claim that he stands in any better position than he would be in were there no deed from the intestate, and the title to the lands were on the record in his name. It is stated, indeed, that the purpose of the action may be to set aside the deed, so that application may be made to the surrogate to sell the lands, as real estate of the intestate, for the payment of his debts. If, however, the deed were set aside, or had never been, and the plaintiff were now making application to the surrogate for sale of the land, the heirs at law could contest his claim, and set up the statute of limitations against it. The judgment would be *prima facie* evidence of the debt, and no more. But, in making evidence that the debt ever existed, it would show that it was eight years since it was due, and also establish *prima facie* the defence of the statute, in favor of the heirs. It cannot prove more in this action.

It is said that the statute is not well pleaded by the defendants. The answer avers that they did not, nor did their intes-

tate, become indebted to the plaintiff within nine years next preceding the commencement of the action, nor did they undertake or promise to pay the plaintiff, in the manner and form set forth in the complaint. The appellant contends that this answer does not negative the accruing of a cause of action within six years of the bringing of the action; that though the promise may not have been made nor the indebtedness begun within nine years, it may have been not until within six that the promise was mature or the indebtedness due and payable. But it will be observed that the answer denies the becoming indebted or promising in the manner and form set forth in the complaint. That manner and form is "in divers demands, notes and accounts, more particularly specified in the judgment roll," which, it is alleged, was filed and judgment docketed against the administrators on the 31st August, 1858. This is tantamount to an averment that the divers demands, notes and accounts were due and payable before the proceedings were commenced, which resulted in a judgment in August, 1858. The answer denying the becoming indebted and the promise and undertaking within nine years, in manner and form as set forth in the complaint, is tantamount to a denial that within nine years there was a becoming indebted and a promise and undertaking to pay the demands, notes and accounts, which became due and payable before August 1, 1858. From the two pleadings the issue is sufficiently definite to admit in proof the defence of the statute.

The judgment should be affirmed, with costs to the respondent.

All concur.

Judgment affirmed.