MARTIN DARLING, RESPONDENT, *v.* FRANKLIN PIERCE AND MYRON PIERCE, APPELLANTS.

*When surrogate disqualified from acting — Section* 18, *chapter* 280 *of* 1847.

Smith, the surrogate of Cortland county, acting as attorney and counsel for the plaintiff Darling, in an action against the executors of one Pierce, recovered a judgment, which was entered December 28, 1871. The executors were then compelled to account before the district attorney, acting as surrogate, and a distribution of the assets was ordered, the decree being made May 17, 1872. On that day, the plaintiff paid the surrogate in full for his services as attorney and counsel, and he then ceased to act as such. October 12, 1876, both executors having died, an administrator, with the will annexed, was appointed. On the next day, plaintiff filed a petition before Smith, the surrogate, praying for a sale of the real estate of Pierce to pay the amount due on his judgment. Such proceedings were had, that an order was made requiring such sale to be made.

*Held,* that, as the surrogate had acted as attorney and counsel in recovering the judgment on which the order of sale was based, he was disqualified under section 81 of chapter 280 of 1847 from acting in the application for such sale.

*Semble,* that it would be improper for him to act in such a case, even though there were no statute in express terms disqualifying a judicial officer from adjudicating upon a matter as to which he had acted as counsel.

APPEAL from a decree of the surrogate of Cortland county, directing a sale of the real estate of a deceased person to pay his debts.

The surrogate before whom the proceedings were had, Mr. A. P. Smith, was attorney and counsel for the respondent Darling, in a litigated suit against the executor and executrix of the last will and testament of Albert L. Pierce, deceased, and succeeded; having secured a recovery against them as such executor and executrix for $3,590.50 damages, and $216.10 costs. The judgment was entered December 28th, 1871. Proceedings were thereafter taken for an accounting before the district attorney of the county acting as surrogate; Mr. Smith being disqualified from acting as surrogate in the matter on the alleged ground of interest. The proceeding resulted in an order or decree for the distribution of the funds of the estate, the amount to be applied on the judgment having been found to be $245.50. The decree for distribution was made May 17th, 1872. On the same day the executor settled with Mr. Smith, and paid him $245.50, in full satisfaction of his claim as attorney and counsel in the suit so as aforesaid conducted to judgment; and he thereupon ceased to act as attorney and counsel for Darling. The executor and executrix having died, Franklin Pierce was appointed administrator with the will annexed of Albert L. Pierce, deceased. His appointment was made October 12th, 1876. On the next day, Darling, the plaintiff in the judgment against Pierce's estate, filed his petition in the Surrogate's Court, praying for an order requiring the administrator to show cause why he should not be required to mortgage, lease or sell the real estate of which the deceased died seized, to pay his debts. The surrogate, former attorney, and still attorney of record in the suit, the recovery in which formed the basis of the application, entertained the proceeding, made the order to show cause, and having adjudicated upon all questions in the

proceeding demanding adjudication, finally made the order or decree requiring the administrator to make sale of the deceased's real estate. From this decree, two persons, heirs-at-law of the deceased and interested in the premises directed to be sold, appealed to this court. The administrator, as such, has not appealed.

*Franklin Pierce*, for the appellants. The motion to dismiss the proceedings, on the ground that the surrogate was disqualified, should have been granted. The provision of 2 Revised Statutes, chapter 3, title 1, page 275, section 8, by which the appellants claim that the surrogate was disqualified to grant this order, is a maxim of every code, and is merely declaratory of man's instinctive sense of justice. (Revisor's Notes, 3 R. S. [2d ed.], 694; 8 Co., 118, A; *Hasketh* v. *Braddock*, 3 Burrows; Judge Prescott' Trial, 149; *Washington Ins. Co.* v. *Price*, 1 Hop. Ch. R., 1; *Commonwealth* v. *Ryan*, 5 Mass., 92; *Pearce* v. *Atwood*, 13 id., 340; Justinian's Institutes, book 4, title 5, law 1; French Code de Procedure, part 1, book 2, title 21, art. 378; Wharton's Legal Maxims, Max., 51; Hunter's Roman Law, 789, 790; Kent's Com., vol. 1 [4th ed.], 448; Reeves' History of English Law, vol. 2, 499–305; *Wright* v. *Crump*, 2 Ld. Ray., 766; see, also, 1 Salk., 396; Prescott's Trial, art. 12; Prescott's Trial, 149, 193; Massachusetts Bill of Rights, art. 29; New Hampshire Bill of Rights, art. 35; *Dimes* v. *Grand Junction Canal Co.*, 3 H. L. Cas., 793; *The People* v. *The Suffolk C. P.*, 18 Wend., 552; *Oakley* v. *Aspinwall*, 3 Comst., 552; *People* v. *Dohring*, 59 N. Y., 377; *Morss* v. *Morss*, 11 Barb., 515; *Strong* v. *Strong*, 9 Cush., 570; XIII Alb. Law Jour., 359 — cases there cited; Lord CHELMSFORD, 7 H. L. Cas., 429; Judge ALLEN [Barnard's Trial, vol. 1], 68; Ch. J. MARSHALL, see 17 Barb., 412; Chancellor SANFORD, 1 Hop. Ch. R., 1; *Williams* v. *Robinson*, 6 Cush., 333; *Moses* v. *Julian*, 45 N. H. R., 57; *Steamboat Company* v. *Livingston*, 3 Cow., 724; Gibbon's Decline and Fall of Rome, vol. 4, p. 310, note.) The surrogate was clearly incapable of making the order appealed from within the holding of each of the following decisions: (*McLaren* v. *Charrier*, 5 Paige, 530; *Ten Eick* v. *Simpson*, 11 id., 177; *Whicher* v. *Whicher*, 11 N. H. Rep., 349;

*Moses* v. *Julian*, 45 id., 52, 57, 58; *Williams* v. *Robinson*, 6 Cush., 333; *Carrington* v. *Andrews*, 12 Abb. Pr. Rep., 348; *Freelove* v. *Smith*, 9 Vt. R., 180; *Fox* v. *Johnson*, 3 Cow., 20; *Lovering* v. *Lamson*, 50 Me. R., 334; *Richardson* v. *Welcome*, 6 Cush., 331; *Stearns* v. *Wright*, 51 N. H. Rep., 600; *Slacum* y. *Simms*, 5 Cranch, 363.) Sections 2, 3, 4, 5, 7 and 8 of the 2 Revised Statutes, 275, are statutes in *pari materia*, declaring the design of the common law to prevent corruption and favor in courts, and they should be construed to that end. (*Carrington* v. *Andrews*, 12 Abb. Pr. Rep., 349; *Halt* v. *Thayer*, 105 Mass., 219; 7 Am. Rep., 515; *Oakley* v. *Aspinwall*, 3 Comst., 551; *Stockwell* v. *White Lake Township*, 22 Mich., 344; *Regina* v. *Aberdear Can. Co.*, 14 Ad. & Ell. [N. R.], 854; Weekly Digest, vol. 6, 452.)

*Warren & Kellogg*, for the respondents. The surrogate has never been attorney or counsel in this cause or proceeding. (Bouvier's Law Dictionary, 1 Vol., 211; Webster's Dictionary [Unabridged]; § 1210, Code of Civil Procedure.) The employment of the attorney ceased with the rendition of judgment. His relation as an attorney to the suit was then ended; for thereby, says Lord COKE, *placitum terminatur* (2 Inst., 378). (*McBrath* v. *Cook*, 1 Moore and Payne, 513; *Lusk* v. *Hastings*, 1 Hill., 656–659; *Bathgate, Adm.*, v. *Haskins et al.*, 59 N. Y., 533; *Rice* v. *Floyd*, 1 Comst., 608; *Porter* v. *Kingsbury et al.*, 13 Hun, 33; *Pratt* v. *Allen*, 19 Howard, 450, 456; *McLaren* v. *Charrier*, 5 Paige, 530.) A judge is not incapacitated, and will not be permitted to withdraw from the decision of a cause on the ground that he has formed or expressed an opinion. (*Steamboat Company* v. *Livingston*, 3 Com., 713, 724; 1 Vol. Bouvier's L. D., 675; 2 Marsh, 517; Coxe, 164; 2 Brins, 454.) A surrogate is not a judge within the meaning of the statute. (*Matter of Watson* v. *Nelson*, 69 N. Y., 536.)

BOCKES, J.:

The sole question presented on this appeal is this, whether it was competent and right for Mr. Smith to act as surrogate in the proceeding in the Surrogate's Court to obtain a sale of the tes-

tator's real estate to pay his debts, such proceeding being based on a judgment which he had procured as attorney and counsel; whether he was not, for the reason stated, disqualified from entertaining the proceeding or acting as surrogate in the matter of the application. .He was not disqualified on the ground of pecuniary interest, as it appears that on the 17th of May, 1872, several years before the proceeding before him was instituted, the plaintiff in the judgment (present respondent) settled with him and paid him in full for his services as attorney and counsel in the case, and the relation of attorney and client, before existing between them, then ceased. This conclusion, that Mr. Smith had no pecuniary interest in the matter after such settlement and payment, renders many of the cases cited by the counsel for the appellants inapplicable to this case. But it is insisted that he could not be discharged from bias and partiality by any arrangement or action between himself and his client, as regards the matters involved in the judgment which he, as attorney and counsel, had been instrumental in procuring; hence that he was in law disqualified from acting as judge in any proceeding wherein the claim on which the judgment was rendered, or even the judgment itself, could be brought in question. It is a sound principle, recognized in all enlightened countries, that all officers clothed with judicial authority should, with a view to their just and upright action, be free from all influences which might, by possibility, induce bias in the exercise of their duties; and so tenacious are wise and just governments in this regard, that in most countries laws are enacted expressly prohibiting magistrates, having judicial power, from sitting in judgment in cases and under circumstances where they might be touched by sinister impulses. So in our own State it is enacted that the sittings of courts shall be public, and that every citizen may attend them; that no judge can sit as such in any cause to which he is a party, or in which he is interested, or in which he would be excluded from being a juror by reason of consanguinity or affinity to either party, and also for various other causes specified in the statutes. (2 R. S., 275, marginal paging.) The provision more directly applicable to the case in hand is as follows: "No judge of any court shall have a voice in the decision of any cause in which *he has been counsel*

*or attorney, or solicitor*, or in the subject-matter of which he is interested." (Laws of 1847, ch. 280, § 81.) It is not disputed that the surrogate is a judicial officer. His functions are in general judicial. So it cannot be well disputed that he acted judicially in the proceedings here under review; and it may be well to inquire to what extent he acted judicially in this case; just what he was called upon to adjudicate; what he was judicially to determine. He was to determine by adjudication (in this case where the application was by a creditor) whether there had been an accounting by the executor, and whether there were or were not sufficient assets to pay the debts of the deceased. These were material averments to be made and proved, and they were in fact made in the petition of the creditor. The appellants in this case, being interested in the premises proposed to be sold, had a right to contest these averments. They might insist that there had been no accounting, or that the pretended accounting was irregular and void, or collusive and fraudulent. So, too, they might attack the claims of creditors with a view of showing that there were, in fact, sufficient assets to pay all just debts against the deceased. It was held in *Baker* v. *Kingsland* (10 Paige, 366), that, before a surrogate was authorized to make an order for the sale of the real property of a deceased person, he must be satisfied on legal proof, that the debts for the purpose of satisfying which the application is made, are justly due and owing from such deceased person, as against the owners of the real estate. The respondents then (and here is the material point in this case) might attack the petitioner's judgment, and also the claim for which the recovery was had. The judgment was not conclusive on the owners of the real estate proposed to be sold. (*Osgood* v. *Manhattan Co.*, 3 Cow., 612; *Baker* v. *Kingsland*, 10 Paige, 366; *Sharpe* v. *Freeman*, 45 N. Y., 802.) The statute applicable to this proceeding is as follows: that " where a judgment has been recovered or decree obtained against an executor or administrator for any debt due from the deceased, and there are not sufficient assets in the hands of such executor or administrator to satisfy the same, the debt for which the judgment or decree was obtained shall, notwithstanding the form of such judgment or decree, remain a debt against the estate of the deceased to the

same extent as before, and to be established in the same manner as if no such judgment or decree had been obtained; provided that, where such judgment or decree has been obtained upon a trial or hearing upon the merits, the same shall be *prima facie* evidence of such debt before the surrogate." (Laws of 1843, ch. 172; 3 R. S., 6th ed., 117, § 60; see, also, cases above cited remarking on this statute.) Nor is this statute repealed by section 1210 of the present Code of Procedure, which was intended to supercede section 8 as incorporated into the Revised Statutes. (3 R. S., 618, § 8, 6th ed.) It is not repealed in terms or by direct reference; and it will not be deemed repealed by implication when both may stand and have due effect. The petitioner's claim against the estate, therefore, was to be determined on adjudication by the surrogate in the proceeding before him, and to be established in the same manner as if no judgment thereon had been obtained, except that in its establishment the statute made the judgment *prima facie* evidence of its integrity. Still the integrity of the claim was to be determined by the adjudication of the surrogate, as was also that of the judgment when offered in evidence to prove its rightfulness. Now, the surrogate had been the attorney and counsel of the creditor in prosecuting the claim to judgment. He had been employed to advise as to its justice and legality. As attorney and counsel, he had labored to establish it in court; and now, in the proceeding before him, he was called upon to decide the same case as judge. Could he free himself from a very natural bias in favor of the justice of the claim; a bias engendered by his former position as counsel and attorney in the case? This cannot be presumed; the contrary is a necessary legal inference. Very plainly his case came within the spirit of the statute, which declares that "no judge of any court shall have a voice in the decision of any cause in which he has been counsel, or attorney, or solicitor;" and this provision is here given emphasis by its substantial repetition in the statute, which declares that "whenever any surrogate of any county shall be precluded from acting as such in any case by reason of \* \* \* having acted as counsel in any cause, and there shall be like disability attaching to the local officer (if there be one) authorized to discharge the duties of surrogate, and also to the county judge, then

the district attorney of such county shall possess the powers and exercise the jurisdiction in all respects in such case as the surrogate of such county would be authorized to possess and exercise, were it not for such disability." (Laws of 1847, chap. 470, § 32; 3 R. S., 86, § 78, 6th. ed.) This statute contemplates a disability of the surrogate in a "case" before him, because of his having acted as counsel in a "cause." So here the surrogate had a case before him for adjudication, as to which he had acted as counsel and attorney in a cause. As counsel and attorney, he had advised that the claim of the creditor was just and legal. The question came before him again as judge in a case requiring its adjudication. He then had a "case" before him as to which he had acted as counsel in a "cause." But in a just and liberal sense, the cause before the surrogate for his adjudication was a cause in court as to which he had acted as counsel and attorney. The question in the Supreme Court was the same in the Surrogate's Court, to wit : Was the creditor's claim a just and legal one against the estate of the deceased ? The question was open to adjudication alike in both courts. In a fair sense, therefore, the surrogate was called upon to act as judge in a cause as to which he had acted as counsel and attorney. The case in hand falls within both the spirit and the letter of the law, in its just import, which declares that "no judge of any court shall have a voice in the decision of any cause in which he has been counsel or attorney or solicitor."

But were there no statute in express terms disqualifying a judicial officer from adjudicating upon a matter as to which he had acted as counsel, we should be inclined to hold such action improper, and good ground for alleging error. Such action is repugnant to one's sense of justice and right, and brings the administration of the law into disrepute by throwing strong suspicion upon the officer's impartiality. This doctrine is recognized in many cases. (*McLaren* v. *Charrier*, 5 Paige, 530; *Ten Eick* v. *Simpson*, 11 id., 177; *Whicher* v. *Whicher*, 11 N. H., 348; *The People* v. *Suf. C. P.*, 18 Wend., 550; *Oakley* v. *Aspinwall*, 3 N. Y., 549, 550 ; *Moses* v. *Julian*, 45 N. H., 52, 58.) To adopt the language of Judge BRONSON in one of the cases cited, "next in importance to the duty of rendering a righteous judg-

· ment is that of doing it in such a manner as will beget no suspicion of the fairness or integrity of the judge." In another of the cases cited, the court remarked that if a judge has acted as attorney, counsel, law advisor or advocate, in relation to the business in hand, that furnishes just cause of exception without reference to the time when such aid or counsel was given. And Judge HURLBUT remarked, in *Oakley* v. *Aspinwall* (*supra*), that " the first idea in the administration of justice is that a judge must .. necessarily be free from all bias and partiality. He cannot be both judge and party, arbiter and advocate in the same cause. · Mankind are so agreed in this principle, that any departure from it · shocks their common sense and sentiment of justice." Now, prior to ¦ May 17, 1872, it was admitted that the surrogate had a pecuniary interest in the judgment. To that time, then, he had the bias of ¦ attorney and counsel in favor of its maintenance; also a bias growing out of pecuniary interest. He might and did relieve himself .. from the bias of *direct pecuniary* interest, by accepting payment in · satisfaction of his claim. But the bias of his position as attorney · and counsel remained. There was an honorable and honest obligation still resting upon him to support a result he had secured to ¦ his client, for which he had accepted compensation. Recognizing ¦ this obligation, can it be maintained, in theory at least, that he, stood an impartial judge without bias between parties, one of whom was his former client, where the question of the justice of the claim, as to which he had advised, and the integrity of the judgment based thereon, which he had procured, should come in question? We are of the opinion that the surrogate was disqualified from entertaining the application for a sale of the decedent's real estate in this case; hence the decree appealed from must be reversed. The proceedings before the surrogate should also be dismissed, as it would be unavailing to send back the case for further or other action before that officer.

.. The reversal of the decree and dismissal of the proceedings should be, as we think, without costs. It does not appear but that the creditor and surrogate acted in the utmost good faith. The record discloses nothing personally reprehensible on the part of either. It seems hard to punish the creditor with the payment of costs, when it is quite manifest that he must be a considerable

loser on his claim. Besides, while the reversal of the decree is necessary for the vindication of a principle of the greatest importance in the administration of justice, still, in this case, it is perhaps proper and right to make the reversal without costs.

Decree appealed from reversed, and proceedings dismissed without costs.

LEARNED, P. J., and BOARDMAN, J., concurred.

Decree reversed, without costs, and proceeding dismissed.