CHAUNCEY S. BUTLER AND GEORGE H. BUTLER, APPELLANTS, *v.* JULIA A. JOHNSON, AS EXECUTRIX, ETC., OF WILLIAM P. JOHNSON, DECEASED, AND INDIVIDUALLY, RESPONDENT.

*Statute of limitations—right of an heir or devisee to set it up in proceedings for the sale of real estate under the decree of a surrogate — in case of the voluntary exercise of a power of sale by an executor — right of a purchaser from the devisee to avail himself of the statute — when the lien of a legacy charged on real estate ceases.*

One Johnson died on June 21, 1871, leaving a will, which was duly proved, by which he bequeathed to one Darrow a legacy of $1,500, and to the defendant, his widow and executrix, an annuity of $1,000; the rest and residue of his estate he devised and bequeathed to George Tunnicliff and three daughters named Butler, Carey and Blake. A power to mortgage or sell real estate, if necessary to pay debts, was contained in the will. The personal estate left by the testator was insufficient to discharge his debts, but the value of the real and personal property exceeded the amount of the debts by about $110,000. On March 28, 1882, the residuary legatees divided the estate between them, the defendant receiving a mortgage upon a part of the real estate, in consideration of which she released her claim upon the estate for her annuity. Tunnicliff, Carey and Blake were insolvent.

In 1881 Darrow presented a petition to the Surrogate's Court for an order compelling the payment of her legacy, in which one Bloomfield, who owned three judgments recovered against the executrix of Johnson upon debts due from him at the time of his death, joined, asking that the said debts and certain others contracted by the executrix should be paid. The surrogate having decreed that all the debts of the testator and the legacy should be paid by the executrix out of the assets, the defendant thereafter advertised to sell at public auction the premises described in the complaint in this action to satisfy the debts as provided in the said decree.

The plaintiffs, who had acquired title to real estate, conveyed to the residuary devisee, Butler, not as purchasers in good faith, but with knowledge of the situation of the estate, brought this action for a perpetual injunction restraining the sale of the premises.

*Held,* that, so far as the devisees were concerned, as more than ten years had elapsed between the probate of the will and the date of the advertisement under which the defendant was to sell, the statute of limitations had run, as against these claims, notwithstanding the fact that judgments had been recovered upon them against the executrix.

That the power of the executrix to sell, if any such existed, was derived from the will alone.

That as the executrix did not take the fee, and as there was no equitable conversion of the real estate into personalty, but merely a power in trust, the

statute of limitations ran against the execution thereof and might be interposed in favor of an heir or devisee.

That as the plaintiffs in this action were in possession of the land, claiming to own it, and the defendant had commenced a proceeding which, if concluded, would at least cast a cloud upon the plaintiffs' title, the plaintiffs were entitled to avail themselves of the statute and to maintain the action.

That the statute of limitations commenced to run, as against the right of Darrow to her legacy, one year after the issuing of letters testamentary, and that her claim thereto was barred thereby.

That as section 1819 of the Code of Civil Procedure, providing that the statute shall not begin to run until the executors' account is judicially settled, did not take effect until September 1, 1880, it was not applicable to this case.

*Shannon* v. *Howell* (36 Hun, 47) distinguished.

APPEAL from parts of a judgment, entered upon the trial of this action by the court at the Otsego Special Term.

The action was brought to restrain the defendant, one of the executrices of the will of William P. Johnson, from exercising a power to sell the real estate of the deceased for the payment of certain debts and legacies.

At the testator's death (June 21, 1871) he was indebted to Amasa Abbott in the sum of $500, to Harriet Conkling in the sum of $400 and to Nicholas Vroman in the sum of $600. In January, 1872, a notice for the presentation of claims was published pursuant to an order, and the three claims above mentioned were, pursuant to the notice, presented to and accepted by the executrix. February 6, 1876, Harriet Conkling recovered a judgment in the Supreme Court upon her claim against the executrix and assigned it to Allen Bloomfield. November 1, 1877, Nicholas Vroman recovered a judgment in the Supreme Court against the executrix upon his claim and assigned it to Allen Bloomfield. November 13, 1877, Allen Bloomfield, as executor of Amasa Abbott, recovered a judgment in the Supreme Court against the executrix upon the Abbott claim. The above-mentioned claims are the only ones against the estate which are unpaid, and for the payment of which and the legacy hereinafter mentioned due Emma J. Darrow, the defendant attempted to sell the land, the sale of which this action is brought to restrain.

By the testator's will and the third codicil, Emma J. Darrow was bequeathed a legacy of $1,500, the defendant (his widow) an annuity of $1,000. One-eighth of the residue of the estate was bequeathed and devised to George Tunnicliff and seven-eighths to the testator's

three daughters, Mary J. Butler, Harriet H. Carey and Louisa A. Blake, to be equally divided between them. The second subdivision of the will became inoperative by reason of the arrival of the youngest daughter at full age before the testator's death. (*Butler* v. *Bloomfield*, MS. opinion, Gen. Term, Third Dept., May, 1882, Appeal Book, page 96.) At the testator's death his personal estate amounted to $45,534.17, and his debts, exclusive of those secured by mortgage, amounted to $55,000, leaving a deficiency of personal assets for the payment of debts of $9,466.17. The testator left real estate worth $150,000, encumbered for $30,000. The real and personal estate of the testator at his death, over and above debts, amounted to about $110,000.

March 28, 1882, the residuary legatees and devisees divided the estate between them. Tunnicliff, Carey and Blake conveyed to Mary J. Butler the lands described in the complaint and other lands, which she accepted as her share. On the same day Mary J. Butler conveyed to Tunnicliff, Carey and Blake the remainder of the estate, they agreeing to pay all of the liabilities of the estate. The defendant received from Tunnicliff, Carey and Blake a mortgage, in consideration of which she released her claim upon the estate for her annuity, and by which mortgage the mortgagors agreed to pay Mary J. Butler $4,166.66 at the death of the defendant. Part of the real estate deeded to Tunnicliff, Carey and Blake has been sold under mortgages given to secure the testator's debts, and the remainder under mortgages given by the testator in his lifetime. Tunnicliff, Carey and Blake are insolvent.

The plaintiffs in this action have acquired title to the real estate described in the complaint by conveyances from Mary J. Butler and her grantees, and purchased with knowledge of the situation of the estate, and are not purchasers in good faith. The defendant's accounts have not been settled before the surrogate. In 1881 Emma J. Darrow filed a petition in the Surrogate's Court for an order compelling the payment of her legacy. Allen Bloomfield, who held three judgments recovered on debts owing by the testator, joined in the petition, and asked that the above and certain other debts, contracted by the executrix in the management of the estate, be paid. The surrogate decreed that all of the debts and the legacy should be paid by Julia A. Johnson and Mary J. Butler out of the

assets in their hands. Mary J. Butler appealed to the Supreme Court, where the surrogate's decree was reversed as to her, but remained in full force as to the defendant, she not having appealed. (*Butler* v. *Bloomfield, supra.*)

February 21, 1883, the defendant advertised to sell, at public auction, the premises described in the complaint (acquired by the plaintiffs from Mary J. Butler), to satisfy the debts of her testator and the aforesaid decree of the surrogate. The plaintiffs began this action for a perpetual injunction restraining the sale of the premises. The court held that the legacy of Mary J. Darrow and the debts of the testator were a lien and charge upon the real estate, and that it could be sold under the power of sale contained in the will, but restrained the sale until the accounts of the defendant should be judicially settled by the surrogate. The court further held that the debts contracted by the defendant as executrix were not a lien upon the real estate, and that it could not be sold for their payment. No costs were given. The plaintiffs appeal from that part of the judgment, providing that defendants may sell their real estate for the payment of Mary J. Darrow's legacy and the testator's debts above enumerated.

*F. G. Fincke,* for the appellants.

*James A. Lynes,* for the respondent.

FOLLETT, J.:

The defendant acquired no power to sell the land under the surrogate's decree; her power to sell is derived solely from the will. Ten years seven months and twenty-three days elapsed between the probation of the will and the date of advertisement under which she attempted to sell. As against the devisees, the statute of limitations had run as against these claims, notwithstanding the fact that judgment had been recovered upon them against the executrix. (*Sharp* v. *Freeman,* 2 Lans., 171; affirmed, 45 N. Y., 802; *Raynor* v. *Gordon,* 23 Hun, 264.) The statute (2 R. S., 101, 102, § 10) permits a devisee, as well as an heir, to plead the statute of limitations against claims for the payment of which land is sought to be sold by proceedings under the statutes. Such also is the rule under the Code of Civil Procedure (§ 2755). It is clear

that in the face of the statute of limitations the land could not, after this lapse of time, have been sold under the statute authorizing the sale of land for the payment of debts.

It was held in *Butler* v. *Bloomfield* (MS. op., Gen. Term, Third Dept., May, 1882, Appeal Book, p. 96) that the executrix did not take the fee under the will, but that the fee passed directly to the residuary devisees, subject to the execution of the power in trust to pay debts and the legacy, if the legacy is a charge, and that there was no equitable conversion of the real estate into personalty. The statute of limitations runs against the execution of a mere power in trust, and may be interposed in favor of an heir or devisee. (*Dickinson* v. *Teasdale*, 31 Beav., 511; affirmed, 1 De Gex, J. & S., 52; *Coope* v. *Cresswell*, Law Rep., 2 Ch. App. Ca., 112.)

The more serious question is, whether the defendant could, as against the devisees, voluntarily execute the power of sale for the payment of claims which creditors could not enforce by reason of the lapse of time. The learned justice, who decided this case at Special Term, held that the plaintiffs were not entitled to a decree restraining the sale, because the statute was designed as a shield and could not be invoked in aid of affirmative relief. Without questioning the correctness of the general rule laid down, we think it was misapplied in this case. The plaintiffs were in possession of the land, claiming to own it. The defendant had begun a proceeding which, if concluded, would at least cast a cloud upon plaintiffs' title. This action is prosecuted strictly in defense of the plaintiffs' title, seeking no affirmative relief as such against the defendant, except to prevent her from clouding their title. Suppose a statutory foreclosure of a mortgage be commenced, all rights of action upon which are barred by the statute, would the owner of the fee be compelled to lie by and permit his title to be clouded by a sale and defend an action of ejectment brought by the purchaser? We think not. The statute of limitations may be used defensively by a plaintiff when, as in this case, he is without an adequate legal remedy.

Emma Jane Darrow's right to recover her legacy accrued June 28, 1872, one year after issuing letters testamentary (2 R. S., 114, § 9), at which date the statute of limitations began to run upon her right to recover the legacy by an action at law, or by a proceeding in the Surrogate's Court; and when defendant advertised the land for

sale, February 21, 1883, the statute had been running ten years, seven months and twenty-three days, and her right to recover the legacy was barred. (*McCartee* v. *Camel*, 1 Barb. Ch., 455; *Smith* v. *Remington*, 42 Barb., 75; *American Bible Society* v. *Hebard*, 51 id., 552; affirmed, 41 N. Y., 619, note; *Clark* v. *Ford*, 1 Abb. Ct. App. Dec., 359; S. C., 3 Keyes, 370; S. C., 34 How., 478; *Loder* v. *Hatfield*, 71 N. Y., 92.) Section 1819 of the Code of Civil Procedure, providing that the statute shall not begin to run until the executor's account is judicially settled, did not take effect until September 1, 1880, more than two years after the right to recover the legacy had been barred, and it is not applicable to this case. (Code Civ. Pro., § 3352.)

The question arising over this legacy is not governed by *Shannon* v. *Howell* (36 Hun, 47), for the reason that the legatee had the right to compel the payment of the legacy at any time within one year after the letters were issued; while in the case cited, no person had become liable to pay the legacies when the assignee of the legatees sought to sell the land upon which the legacies were expressly charged. In that case the legatees had not concurrent remedies.

Any person interested in an estate as heir, devisee, legatee or creditor may, without the concurrence of the executor, interpose the statute of limitations as a defense to a claim brought against the estate. (*Partridge* v. *Mitchell*, 3 Edw. Ch., 180; *Sherwen* v. *Vanderhorst*, 1 Russell & Mylne, 347; *Kendrick's Estate*, 15 Abb. N. C., 189; S. C., 3 Dem., 301; *Warren* v. *Paff*, 4 Bradf., 260; *Sharp* v. *Freeman*, *supra*.)

The judgment should be reversed and a new trial ordered, with costs to abide the event.

HARDIN, P. J., and BOARDMAN, J., concurred.

Judgment so far as appealed from reversed, and a new trial ordered, with costs to abide event.