(27 Misc. Rep. 106.)

### BURNHAM v. BURNHAM et al.

(Supreme Court, Special Term, New York County. April, 1899.)

1. DESCENT AND DISTRIBUTION — DEBTS OF INTESTATE — JUDGMENT AGAINST EXECUTOR.

A judgment against an executor for a claim due by the testator is no evidence of the indebtedness, in an action to charge the devisees of testator's real estate therewith.

2. SAME—ACTION TO CHARGE DEVISEES—EVIDENCE.

In an action to charge devisees of real estate with an alleged indebtedness of the testator, consisting of his indebtedness to a firm composed of himself and plaintiff, it appeared that they were engaged in business as collectors, and that the money collected by them was deposited in the firm name, and paid over monthly to the owners, less their commissions, which were divided between them semiannually. Plaintiff kept the books of the firm, and they showed no misappropriation by decedent; all the money collected having been paid over to the owners, except money collected during the month preceding his death, which was on deposit in the firm name, and which was afterwards paid to the owners by plaintiff. *Held*, that decedent was not indebted to the firm.

3. SAME—LIMITATIONS.

An action to charge devisees of real property with debts of their testator is an action on a liability created by statute, within Code Civ. Proc. § 382, requiring such action to be brought within six years, and, where the claim was due at the time of testator's death, it is barred at the end of

nine years thereafter, under section 1844, prohibiting the commencement of such action until three years after testator's death, and section 406, excluding from the period of limitations any time during which the bringing of an action is stayed.

Action by Beekman T. Burnham against Emily A. Burnham and others. Dismissed on the merits.

William B. Ellison, for plaintiff.

Scott & Upson, for defendant Emily A. Burnham.

Charles Strauss (Michael A. Quinlan, of counsel), for Arline P. Burnham and Reginald L. Burnham.

KELLOGG, J. This action is brought to charge the defendants as devisees of Elbert S. Burnham, deceased, with the payment of a considerable claim which, plaintiff alleges, the deceased owed at the date of his decease. It is not questioned that the devisees took from the testator sufficient real estate to satisfy the claim; but the devisees contend that no claim ever existed, and, if one ever did exist, it is barred by the statute of limitations. The testator died January 12, 1888, and this action was commenced April 14, 1898. The claim, if any existed, was due at the date of the testator's death. It appears that a claim was by the plaintiff presented to the executrix of the estate of the testator in 1890, which was rejected, and that an action was brought in the supreme court against the executrix, which resulted in a judgment in 1896 for $12,945.28 on the report of the referee. This judgment is offered in this action by plaintiff as evidence of the amount and validity of plaintiff's claim.

The defendants insist that the judgment is neither conclusive nor prima facie evidence on that subject, as none of these defendants were parties to that action, and are in no way bound by the adjudication. I think the position taken by the defendants is supported by all the decisions of the courts in this state where the exact or analogous question has arisen. Sharpe v. Freeman, 45 N. Y. 802; Rathbone v. Hooney, 58 N. Y. 467; Kent v. Kent, 62 N. Y. 560; Collins v. Hydorn, 135 N. Y. 320, 32 N. E. 69. Upon what theory or proof the referee was led to his conclusion, or upon what admissions of the defendant in that action, is not apparent. All the evidence ever in existence to support the plaintiff's claim, except the testimony of some witnesses now dead, seems to have been offered on this trial, and from this it appears: That plaintiff and the deceased were brothers, and were co-partners from prior to 1865 to the decease of the testator, in 1888. That their business required no capital, and the ownership only of the office furniture. That they were collectors of rents for others, collecting rents aggregating about $6,000 per month, and depositing the money in bank in the firm name, and paying over the money, less a small commission, the forepart of the month following. Once in six months the profits or commissions were figured up, and presumably each took his share. Books were kept of these transactions by the plaintiff, who was the only bookkeeper. Money was collected by both and by clerks; but, so far as the books show, or the testimony shows, all the money collected, and of which these brothers became temporary custodians, was deposited in the firm

name in the bank, and was properly drawn on firm checks, and paid over to the proper owners. The books show no appropriation of any part of these trust funds by either partner, and no indebtedness of either partner to the other, or indebtedness of either partner to the firm. At the time of the death of the testator the collections for the month of December previous, and to January 12, 1888, were unpaid to the owners; but the bank book shows that all these moneys were in bank, and came into the hands of plaintiff as surviving partner, and were paid out by him, and that all the company debts or claims of owners of the money held in trust were extinguished with money so collected and deposited and held temporarily by the company. There is a confusion apparent in the memory of the plaintiff when he attempts to give any specific fact looking to the establishment of a claim. The books themselves furnish none upon which a claim against either partner can be based. It is evident that they intended to close up their personal accounts and divide profits each half year, and that would account for the total absence of any book account of the amount each received.

It is contended by plaintiff that the theory adopted by the referee in the action against the executrix should be adopted here, viz.: To charge the deceased with all the money which the books showed was collected by the firm since 1865, and give him credit for only what the books showed had been paid out, though it is admitted that all the rents had been paid over, except those collected in December, 1887, and up to January 12, 1888, and that the money was in bank in the firm name to pay these when testator died. These books, which are to guide on this monstrous proposition, were kept exclusively by the plaintiff. Such a method of procedure against a dead man's estate could only be adopted upon the clearest proof, and such proof as would most convincingly destroy the accepted rules in such cases, and close the door against the reasonable presumptions of equal honesty, liability, and responsibility of co-partners. All the evidence of any worth here presented is opposed to this theory of plaintiff. The plaintiff, as bookkeeper for the firm, had at all times all the facts before him, and, if either partner abstracted for his personal use any of the trust money or any company money, he must have known it, and the proper entry of fact would have been made in the books by him kept. He cannot, now his brother is dead, expect to get a willing ear to plaints which impeach the fairness of his book record. If the deceased brother was by the firm understood to be held responsible to the firm for all the money coming to the custody of either co-partner, we should expect to find an account in the books kept with him, and each item received charged up against him, with corresponding credits for money paid out, and we would also look for a bank account in his name alone, where these moneys were deposited under his sole control, and not a bank account, as here, showing all these moneys deposited in the firm name, and subject to withdrawal by either one of the partners. The evidence of the books here offered and the testimony of plaintiff's witnesses are so convincing that, if even the former judgment against the executrix were to be regarded as prima facie proof of an existing claim against the heirs or devisees,

the force of such judgment would be completely destroyed.   I am further of opinion that the claim, if one ever existed, is barred by the statute of limitations, and that the six-years statute applies in such cases.   The six years, however, to be extended by the three years after the decease of the debtor, in which action is prevented by provisions of the Code.   This seems to be the precise question determined in Adams v. Fassett, 149 N. Y. 61, 43 N. E. 408.   The complaint herein should be dismissed upon the merits, and judgment is so directed.

Complaint dismissed.