RICHARD O. HOLDEN, Trustee, etc., Respondent, v. THE NEW YORK AND ERIE BANK et al., Appellants.

Where an agency is continuous and made up of a long series of transactions of the same general character, knowledge acquired by the agent in one or more of the transactions, is notice to the agent and the principal, which will affect the latter in any other transaction in which the agent, as such, is engaged, and in which the knowledge is material.

By the will of W. R. G., the executor, J. S. G., was authorized and required to set apart, invest and hold a certain portion of the funds of the estate for the purposes of certain specified trusts. J. S. G. deposited nearly $17,000, set apart from the assets of the estate as part of the trust fund, to his credit as executor, in the N. Y. & E. Bank, of which bank he was the president, and of whose business affairs he had the entire control and management. J. S. G., in fraud of the cestuis que trust, caused certain shares of the stock of the bank owned by him to be transferred through a third person from himself individually to himself as executor at par, he making the transfers upon the books of the bank as president, knowing at the time that the bank was insolvent, and the stock worthless. As part payment for the stock he drew checks upon his account as executor for $17,000, and deposited the same to the credit of his individual account, which was at the time overdrawn $6,522.50.

He was also otherwise largely indebted to the bank to much more than the amount of the check. J. S. G. subsequently drew out the balance deposited to his individual credit. In an action to set aside the transfer of the stock, and to recover of the bank the deposit, *held,* that the bank was chargeable with the knowledge possessed by its agent, J. S. G., when making the transfers, whether acquired by him as such agent, as executor, or as an individual, and was responsible for the fraud to the extent that it profited thereby.

Also, that the profit of the bank in the transaction was not simply the amount, the account of J. S. G. was overdrawn at the time; but the whole sum of $17,000, which passed from the estate to the property of the bank.

*Seneca Co. Bank* v. *Ncars* (5 Den., 327); *Fulton Bank* v. *N. Y. & S. C. Co.* (4 Paige, 127), distinguished.

After the death of J. S. G., on the petition of the *cestuis que trust,* plaintiff was appointed trustee of the trust estate, and as such brought this action. *Held,* proper; that the funds were in the hands of J. S. G. as trustee, not technically as executor, and there was no duty to be performed in reference thereto requiring the appointment of an administrator with the will annexed; that the trust fund was such property as fell within the jurisdiction of a court of equity, which had power to appoint a custodian and manager of it.

Also, *held,* that the bank, as a wrong-doer, was properly chargeable with interest on the deposit from the time of the transfer, and with costs.

Where, upon trial before a referee, his decision upon objections to evidence is reserved, and no exception to the mode of treatment is taken, an objection to it cannot be considered upon appeal.

(Argued January 18, 1878; decided January 29, 1878.)

APPEAL from judgment of the General Term of the Supreme Court, in the fourth judicial department, affirming a judgment in favor of plaintiff, entered upon the report of a referee.

This action was brought, among other things, to have certain assignments of shares of the stock of defendant, The New York Erie Bank, set aside as fraudulent, and for an adjudication declaring the amount of a deposit in said bank by John S. Ganson, as executor under the will of William R. Gwinn, transferred upon such assignments from his account as executor to his individual account, to be a valid claim and liability against the bank.

The facts, as found by the referee, were substantially as follows: On the 3d day of July, 1861, William R. Gwinn,

of the city of Buffalo, died, leaving a will in and by which John S. Ganson, of said city, was appointed sole executor. By the will, the testator gave and bequeathed to each of his three children the interest upon $20,000 during their lives, respectively, and authorized said executors to set apart the necessary funds, and to invest the same for the purposes of the trust. Said executor in December, 1861, set apart out of the assets of the estate the said trust fund of $60,000, in bonds and mortgages and other securities, including his own bond of $6,000. Said Ganson died in August, 1875, and upon petition of the *cestuis que trust*, plaintiff was by order of the Supreme Court appointed trustee under the will in the place of said Ganson. After the appointment of the plaintiff as trustee, there was delivered to him as said trustee, by defendant, Sophronia Ganson, executrix of the will of John S. Ganson, and as representing the trust fund, $32,000 in United States bonds, and $28,000 in the capital stock of the New York and Erie Bank, and the said personal bond of Ganson. The certificates of stock, representing 280 shares of said stock, purported to have been issued to and held by John S. Ganson, executor of William R. Gwinn, deceased. They were in fact issued and bear date on the 17th of April, 1873. Ganson intended to place the balance of the trust estate, above the sum of $32,000 of United States bonds, in the said shares, thereby retiring his individual bond. On the said 17th April, Ganson had on deposit to his credit as executor of William R. Gwinn, the sum of $16,866.72, with the New York and Erie Bank, and soon after received other money and deposited it with said bank to his credit as executor, making the aggregate deposit more than $17,000, which moneys had been collected by him out of the securities set apart for said trust fund, and then constituted a part of said trust fund. On the said 17th day of April, 1873, the following transactions were performed by Ganson, the said bank and one Erastus B. Seymour, in the banking office of said bank, in the city of Buffalo, with the fraudulent intent and purpose to place the sum of $28,000 of said trust fund in

the stock of said bank at its par value, then being the prop-
erty of Ganson, and to transfer the said sum of $17,000 to
the account of said Ganson, in his private capacity, in said
bank.  Seymour, by the procurement of Ganson, executed
to Ganson his promissory note for $28,000, dated on that
day, and payable to the order of Ganson, on demand, with
interest, and upon it the said Ganson made the following
indorsement : " $17,000 paid on the within April 17, 1873."
At the same time, and as part of the transaction, Ganson
executed to Seymour his promissory note for $28,000, dated
on that day, payable to the order of Seymour, on demand,
with interest, and thereupon the said Ganson made the fol-
lowing indorsement : " $17,000 paid April 17, 1873, on
within."  Ganson then made his check as executor of William
R. Gwinn, on the bank for $17,000, payable to himself, and
the bank transferred the said sum from the credit account
of Ganson as executor, and placed the same to the credit of
his private account.  Ganson transferred to Seymour 280
shares of the stock of the bank, and immediately Seymour
re-transferred the same to Ganson as executor, and the bank
issued a new certificate therefor to said Ganson as such exe-
cutor, and made corresponding entries of such transfer on
the books of the bank.  At the time of the said transactions,
and for many years previous thereto, and subsequently down
to the time of his death, Ganson was the sole manager and
had sole control of the New York and Erie Bank, occupying
the position of president.  Within about a week after the
death of Ganson, said New York and Erie Bank was declared
insolvent, and on the 27th day of September, 1875, placed
in the hands of the defendant, George S. Hazard, as receiver,
and it was disclosed and made to appear that at the time of
the transfer of said shares of stock the said bank was insol-
vent, and the said stock was worthless ; all of which was
well known to Ganson and the bank.  No officer of the bank,
except Ganson, took any part in these transactions.  At the
time when the bank transferred the said sum of $17,000 to
the individual account of Ganson, he had overdrawn his pri-

vate account with the bank in the sum of $6,522.56. Ganson was also indebted to the bank in the sum of $50,000 and upwards, not appearing in his individual account. When the plaintiff became acquainted with the facts, he refused to receive, and repudiated the bank stock; gave notice thereof in writing to the said Sophronia Ganson, executrix, and the receiver of the bank, and tendered back to the said Sophronia Ganson the certificates of stock, which she refused to receive.

As conclusions of law the referee found, among other things, that the New York and Erie Bank having received the said sum of $17,000, knowing the fact of, and aiding and assisting in its fraudulent misappropriation by Ganson, and its conversion by him to his own use, was bound to account for and repay the same to plaintiff, with interest thereon from and after the 17th day of April, 1873.

That the stock certificate so issued to Ganson as executor was fraudulent and void, and constitutes no part of the trust estate and no title to said stock vested in said executor; also, that plaintiff was entitled to recover the costs of this action against the defendant, the New York and Erie Bank, to be paid by the receiver out of the assets of the bank. Judgment was entered accordingly.

Further facts appear in the opinion.

*Spencer Clinton,* for appellants. The knowledge of Mr. Ganson could not be imputed to the bank, merely because he was its president. (*Bank of U. S.* v. *Davis,* 2 Hill, 463; *Wash. Bank* v. *Lincoln,* 22 Pick., 24; *Winchester* v. *B. & S. R. R. Co.,* 4 Md., 231; *Seneca Co. Bank* v. *Neass,* 5 Denio, 329, 337; *Fulton* v. *N. Y. & S. Coal Co.,* 4 Paige, 127.) Plaintiff was not the proper party to bring this action. (*Leitch* v. *Bell,* 48 N. Y., 585.)

*J. H. Martindale,* for respondent. The appointment of plaintiff as trustee, by proceedings founded on petition, was valid. (*People* v. *Norton,* 9 N. Y., 178; 1 Barb. Chy. Pr.,

chap. 11, p. 578; *Hawley* v. *Ross*, 7 Paige, 103, 105.)   The bank was liable to account for, and repay plaintiff the money fraudulently converted by it and Ganson.   (*Butler* v. *Watkins*, 13 Wall., 462; Green's Brice's Ultra Vires, 254, 260; *Gray* v. *N. Y. & Va. St. Co.*, 5 N. Y. S. C. R., 224; Angell & Ames, § 387.)

FOLGER, J.   To rightly consider this case, we must look upon Ganson, the chief actor in the transaction, in three capacities.   They are not altogether consistent, but he exercised them all.   His more immediate interest was personal, and in that he acted as an individual.   He was also an agent of the bank, its principal financial officer, the real and constant controller and manager of its affairs; indeed, it is not easy to separate him from it, or to consider him as other than the bank itself, so completely were the affairs of it subject to his will and under his immediate management. He was also the executor of the will of Gwinn, and, by virtue of that office, the trustee of the fund created by that instrument.

And what were the material facts in this case, a knowledge, and the existence of which made the transaction unjust toward the *cestuis que trust*, and, therefore, fraudulent upon them?   They were the worthlessness of the stock arising from the impaired condition of the bank ; the large indebtedness of Ganson to the bank, as an individual, and as a member of two or more partnerships, real or nominal, and his inability to meet that indebtedness from his own or partnership means; that the bank was upon its books, and, in fact, a debtor to the estate of Gwinn for a deposit, subject to immediate withdrawal, which was payable only upon the check of Ganson as executor; that it was, at the same time, a creditor of Ganson as an individual, in his exhausted pecuniary state; that Ganson was, contrary to his duty to the estate of Gwinn and to the *cestuis que trust*, about to invest, and did invest, some of the funds of that trust in stock of the bank, the shares of which he owned in his own right,

and did thus shift from himself to the trust fund, property unfit for a permanent investment of such a fund. Of all these facts Ganson had knowledge, either as the prime officer of the bank, or as an individual or as executor.

As matter of fact, whatever knowledge, information or notice, he had in either of these capacities, he carried with him into his exercise of the other. As agent of the bank, he owed it a duty in every transaction in which the bank took a part, under his observation. Hence, as matter of law, whatever notice of facts he had in any capacity, which were material in the performance by him of the part of the bank in any transaction, became notice to the bank, his principal ; as it was his duty to give it notice thereof in that matter. It is the rule, that the knowledge of the agent is the knowledge of his principal, and notice to the agent of the existence of material facts is notice thereof to the principal, who is taken to know everything about a transaction which his agent in it knows. This rule is sometimes stated, so as to limit it to notice arising from, or at the time connected with, the subject-matter of his agency. Such notice must have come to the agent, it is said, while he is concerned for the principal, and in the course of the very transaction, or so near before it that the agent must be presumed to recollect it. This limitation, however, applies more particularly to the case of an agent whose employment is short-lived, so that the principal shall not be affected by knowledge that came to the agent before his employment began, nor after it was terminated. But where the agency is continuous, and concerned with a business made up of a long series of transactions of a like nature, of the same general character, it will be held that knowledge acquired as agent in that business in any one or more of the transactions, making up from time to time the whole business of the principal, is notice to the agent and to the principal, which will affect the latter in any other of those transactions in which that agent is engaged, in which that knowledge is material. If the principal in this case, The New York and Erie Bank, had been insolvent, say on

the first day of January in a given year, and that fact had then been known to Ganson, and the fact and knowledge of it was material in a transaction of the bank, taking place through him on the first day of the succeeding April, the knowledge acquired by him on the first-named day was knowledge with which the bank was chargeable on the last-named day; and so it would have been with knowledge of any fact not so intimately connected with the condition of the principal, the bank, but relating to the character and relation of dealers with it. (*Porter* v. *Bank of Rutland*, 19 Vt., 410.) We doubt not that the knowledge of Ganson of the facts above detailed was chargeable to the bank, so far as that knowledge was material in the transaction now under consideration. It mattered not when, during the course of his prior official management of the affairs of the bank, he acquired the knowledge; it was knowledge acquired in its business, and applicable to any subsequent transaction in which it was material. This may be tested by supposing that it was not Ganson who was the controlling officer of the bank, but some other person. Would not whatever that person knew or had notice of before this transaction, in his official capacity, as to the state of the bank, as to Ganson's relations to it, as to the state of the latter's accounts as an individual and as executor or otherwise, affect this transaction as much as if told to him at the moment of the transaction taking place? That Ganson held triple relations to the matter did not alter his relation to the bank, his principal, nor did it hinder his knowledge acquired as an agent, from affecting his principal in the part he took as an agent. The subject-matter of his agency was the conduct and direction of the affairs of this bank. He represented the bank in all these transactions. He was every time of them engaged in the business of the bank. • Notice to him while so engaged, though no otherwise received than by the possession of knowledge acquired by him while acting in another capacity, was notice to the bank. That is a necessary result of his triple character. If Ganson, the individual, and the executor, and

trustee, had made known to some other person, who was the manager of the affairs of the bank, all that Ganson knew as individual and executor, that manager would have received notice in that capacity; why should it differ because Ganson was the manager? The knowledge in his mind as an individual and executor, was knowledge in his mind as agent, under the limitations above set down. Had his principal here been an entity, it would have been his duty to have communicated it to that principal. Not being an entity, but touching other persons and acting in its own business through him as its agent, his material knowledge became its knowledge. In the transferring of this stock from himself to the estate, he did act a part as an officer of the bank, and hence as its agent. He owed it the duty, that in so doing he should act in the light of the fact that the stock was not a valuable thing, and not a proper thing in which to invest the funds of a trust estate, and that it was a wrong done to the *cestuis que trust* to invest the fund in it; and that it was a sale by Ganson as individual to himself as trustee, which the law will not uphold unless for the benefit and advantage of the estate. In changing the deposit of $17,000 from one account, which was a creditor account on the books of the bank, to an account to some extent at least a debtor account thereon, he acted as an officer of the bank and as its agent. He owed it the duty, that in so doing he should act in the light of the fact that the bank was thereby ridding itself of an indebtedness from it to an estate, and was obtaining payment of some indebtedness to itself, and making a considerable deposit in favor of a customer whose pecuniary responsibility was weak, if anything at all.

We cannot doubt, then, that the first point made by the appellant is not tenable. The knowledge of Ganson as an individual or as an executor was not imputable to the bank merely because he was its president, but because when it acted through him as president, in any transaction where that knowledge was material and applicable, it acted through an agent who at that very time had a knowledge of facts

which gave a character to the transaction as fair and justifiable, or the reverse, and whose duty it was to make that knowledge known to his principal. It was the same, when the memory of Ganson, though the individual and executor, gave to the apprehension of Ganson the agent, notice of these facts, knowledge of which he had acquired while acting as agent in other business of the bank, as if another than him had acted as agent, and he or another than him had given formal notice of them to that agent. So, in the *Bank of U. S.* v. *Davis* (2 Hill, 451), the director of the plaintiff carried knowledge into the meeting of the board of directors which he had before acquired as an individual, yet the bank was charged with that knowledge. In the case in 5 Denio, 329 (*Seneca Co. Bk.* v. *Neass*), it did not appear that the cashier of the plaintiff acted as its agent in the discounting of the note. Clearly he was not its agent in obtaining the note for his own benefit. That case does not hold that if he had acted for the bank in discounting the note, his knowledge of how the note was got would not have been chargeable to the bank. So, in *Fulton Bank* v. *N. Y. & S. Coal Co.* (4 Paige, 127), though it was held that the plaintiff was not chargeable with notice of facts which came to the knowledge of its president while not acting as its agent, yet it was also said, that if afterwards it became his duty to act upon that knowledge in the business of the bank, his principal would be chargeable with notice of the facts, of which he had acquired the knowledge while acting in another capacity than as agent of the bank.

We are of the opinion that the bank was chargeable with notice of all the material facts which entered into the transaction, which is the subject of this action.

There is a question not explicitly raised upon the points of the appellant, and which, perhaps, was not meant to be pressed upon our attention, but which it is well to notice, so as to make a full disposition of the case.

In that point which urges that the bank was not chargeable with notice of the facts which Ganson knew, occurs sub-

stantially this passage : It (the transfer of the stock), was a matter in which the bank had no interest, and over which it had no control : He owned it absolutely, and could transfer it to whom he pleased, and it could not interfere; and the same is true of the subsequent deposit of the money and its withdrawal.    It is true that the bank, as regards some of the characters which Ganson wore, was as if a third person, owing no duty to any one, save to do just what it could be compelled by law to do, and no more.    So it could not, out of any regard to the Gwinn estate, lawfully refuse to recognize Ganson's assignment of his stock to Seymour, and that from Seymour to Ganson as executor, and to make the corresponding transfers upon its books, nor to pay over the amount standing to his credit as executor on the presentment of a check drawn on it by him in that capacity. But, with knowledge that the transaction was a wrong to the estate of Gwinn, that it could not but be to the harm of the *cestuis que trust*, if maintained ; it was under a duty to do nothing more than it could be compelled by law to do, and especially not to make or accept any gain or advantage to itself by the transaction.    Therefore it was a wrong for it to receive from Ganson, as the individual, the money which it was obliged to pay to him as executor.    It was its duty to those interested in that money, to refuse to take it upon deposit to his individual account.    It had no right to make profit thereby, and for as much as it did profit it made itself liable.

The question next is, how much did it profit?    Clearly; by as much as the account of Ganson was overdrawn at the date of the deposit.    This was $6,522.56.    So finds the referee, and so is the testimony.

Was this all?    The check drawn by Ganson as executor was for $17,000.    The sum to his credit as executor was $16,866.72, but the over-draft of $133.28 was subsequently made good by him as executor.    This was a continuation of a part of the same transaction.    Thus, the whole amount of $17,000 passed from the estate of Gwinn to the property

·of the bank. Clearly, it could not have been compelled by Ganson to part with it again, save for the excess over the amount of his individual over-draft. The referee has also found that Ganson was indebted to the bank, at the time of the transaction, in the sum of $50,000 and over, not appearing on his private or individual account. And the testimony discloses other indebtedness of Ganson to the bank not specifically found by the referee. His liability, individually and as a partner, to the bank, on the 9th September, 1875, and prior to that date, was $182,407.66. Part of this was for moneys taken by Ganson to pay his own debts, and represented somehow in the letter drawer of the bank as "cash." How much this kind of debt amounted to is not shown, but these items reached as far back as 1869. With these facts before us, it is plain that, had the bank chosen to stand upon its legal rights with Ganson, it could have applied the whole amount of the $17,000 upon its various demands against him, and have successfully resisted any action by him to obtain it. Hence it profited at once by the transfer of the sum from the executor's account to Ganson's individual account. As it was at liberty to refuse to take the deposit from him, ·as it was its duty to decline any advantage thus proffered it, by taking it and receiving the advantage — knowing the ·transaction to be wrong and fraudulent — it became a party to it, and liable in an action for restoration.

There are some minor questions to be considered.

First. We think that the plaintiff is the proper party to bring this action. He was properly appointed trustee. (*People* v. *Norton*, 9 N. Y., 178.) There was a trust fund, which it was the duty of Ganson to manage and preserve in the capacity of a trustee of it, and not in his capacity technically as executor. In his latter capacity, he had already set apart from the assets of the estate securities to the amount of $60,000, and they were in his hands as a trustee in fact. Though these securities had not been divided into parcels of $20,000 each, so that it could be said which particular security or securities belonged to each *cestui que*

*trust,* yet they had been treated as belonging to the three funds of $20,000 each, and interest on such an amount had been separately paid to each beneficiary.  Ganson's duties in relation to these securities as a technical executor of the will had ceased, and they remained in his hands in his capacity as really trustee, though by name an executor. There was no further duty to be performed about them which would properly be done only by an administrator with the will annexed.  Hence it was fitting that when it became needful to appoint some one to succeed him in behalf of these beneficiaries, that such person should be created a trustee of that fund, rather than that an administrator with the will annexed should be appointed.  It is clear that here was a fund, the *corpus* of which was not to be at once paid over to any person as his own.  It was to be managed, invested and cared for, and the income received and applied according to the directions of the creator of it. It was, in truth, a fund to be held in trust by some one for the benefit of others.  It was such property as fell within the jurisdiction of a court of equity, and such a court had power to constitute a custodian and manager of it.

It is true that it was not determined which particular securities were held for the benefit of each *cestui que trust,* and had there been a loss of any of them, questions might have arisen among them as to where the loss should fall.  But that does not affect the position and liabilities of parties in this action.

*Second.* Nor was the transaction a mere breach of duty on the part of Ganson.  Such is not the finding based upon the evidence.  His intent and purpose is found to have been fraudulent.  The bank is found to have been cognizant of his *devastavit* of the trust fund.  There is further finding that it received the $17,000, the product of the transaction, knowingly and fraudulently; and to this there is no exception.

There is not ground for the claim of the appellant that the transaction was a breach of duty, but not a fraud, and that the rule is applicable here, that where money is received by

an innocent third party, in the usual course of business, and so paid out again, the third party is not liable.

Third. It is claimed that the referee should have allowed to the bank a considerable sum paid by Ganson by means of checks upon the bank to the *cestuis que trust*, or for their benefit. It is asserted that the sum thus paid was from this fund, or the income of it. There is no finding that it was. There is a refusal to find that it was, though there is a finding of payments. As the case shows a receipt by Ganson from the Evans mortgage of $5,000, during the period of these payments, and also deposits by him in bank to the credit of his account as executor, we may not say the checks were from the deposit of $17,000. Nor, in view of that fact, can we say that the referee was in error in refusing to find as requested, or in not crediting the bank with those payments.

Fourth. Nor was it error to charge the bank with the costs of the litigation. It was a wrong-doer. The judgment was against it. It was properly chargeable with the costs of the suit. It may be that the estate of Ganson was also chargeable. The omission to charge it was not an error of which the bank can take advantage. There is no contribution among wrong-doers.

Fifth. Interest was properly chargeable against the bank. It had done a wrong. The party suffering was entitled to all his damages. Interest was a part of them. The claim of the plaintiff, and of those he represents as trustee, is not like that of a voluntary contract creditor. The money which the plaintiff claims was not by fraud, and is to be restored as of the day it was got, which can be done only by an allowance of interest. The other creditors of the bank should not get a benefit by this fraud. The $17,000 would not have been, it may be assumed, in the funds of the bank, but for this fraud, nor used by it, and then by so much would the insolvency of the bank have been the more disastrous to its contract creditors. To abate from the damages to this trust fund, by disallowance of interest, would be to benefit

creditors by contract, at the expense of the fund, and by reason of the fraud.

Sixth. Several objections were taken to the admission of evidence. The decision on these objections was reserved by the referee. It does not expressly appear that a decision was ever made, though the evidence is in the case, and is used by both parties.

There was no exception to this mode of treating the objections. The counsel for the plaintiff consented on the argument that the objections should be considered as formally taken, and as presenting exceptions to the admission of the evidence; we did not understand him to consent to the consideration of an exception to the mode of treating the objection by reserving the decision upon it. And that is the point urged upon us; it is not tenable. (*Sharpe* v. *Freeman*, 45 N. Y., 802.)

The judgment appealed from should be affirmed.

CHURCH, Ch. J., MILLER and EARL, JJ., concur. ALLEN and ANDREWS, JJ., did not concur, for the reason that they doubted the liability of the bank for an amount beyond the over-draft of Ganson, which was satisfied by the deposit of the trust fund to his individual credit, and therefore did not vote. RAPALLO, J., absent.

Judgment affirmed.