·THE FISHKILL SAVINGS INSTITUTE, RESPONDENT, *v.* HENRY BOSTWICK, RECEIVER OF THE NATIONAL BANK OF FISHKILL, AND THE NATIONAL BANK OF FISHKILL, APPELLANTS.

*Corporation — liability of, for tortious acts of its officers — when it is chargeable with their knowledge — what is a ratification of their acts*

The plaintiff and the National Bank of Fishkill occupied for their business purposes the same offices, and the business of plaintiff with its depositors was conducted through the latter. One Bartow was the cashier of the bank and treasurer of the plaintiff, and the active manager of both. Bartow, without the knowledge of the other officers of the bank, took from a safe deposit company in New York, certain securities belonging to the plaintiff, and pledged them to secure a loan of money borrowed for and applied to the use of the bank.

In an action by the plaintiff, against the bank and its receiver, to recover for the conversion of the bonds *held,* that the bank was chargeable with the knowledge of its cashier as to the loan, and the means by which it was effected.

That the reception of the money by it, and the application thereof to its uses, was a ratification of the acts of the cashier in borrowing it.

That the plaintiff was entitled to recover.

APPEAL from a judgment in favor of the plaintiff, entered upon the report of a referee.

This was an action in trover, brought for the conversion of certain government bonds owned by the plaintiff.

The Fishkill Savings Institute and the National Bank of Fishkill occupied for their business purposes the same offices, and the business of the Savings Institute with its depositors was all conducted through the National Bank.

The Savings Institute had a board of trustees and a president, and the National Bank had its board of directors and president; but the active manager and general agent of both was Alexander Bartow, who was the treasurer of the Savings Institute and cashier of the National Bank.

In the autumn of 1873, the Savings Institute owned six United States bonds for $10,000 each, registered in the name of the Savings Institute; and the trustees, in September of that year, in anticipation of demands to be made on their bank, passed a reso-

lution authorizing their president and funding committee to pledge the bonds belonging to the Savings Institute to raise money to pay depositors, if it should be found necessary. In March, 1874, the president of the Savings Institute did sign the blank transfers upon the back of the bonds, thereby practically rendering them transferrable by delivery. The emergency or necessity requiring the Savings Institute to sell or raise money on these bonds, and in preparation for which the resolution of September, 1873, was passed, never occurred, and the bonds were never sold or used for raising money by or for the Savings Institute.

In the spring of 1874, the National Bank of Fishkill had business relations with the Merchants' Exchange National Bank in the city of New York, and had become indebted to that bank in a considerable amount.

In or about April of that year Bartow, without the knowledge of the trustees or president of the Savings Institute, and without the knowledge of the directors of the National Bank of Fishkill, took the bonds in question to the Merchants' Exchange National Bank, and pledged them with the last named bank as security for the indebtedness of the National Bank of Fishkill, upon the account between the two National Banks ; and the bonds so remained pledged as security, as aforesaid, until July 31, 1874. On that day the amount due from the National Bank of Fishkill to the Merchants' Exchange Bank was upwards of $60,000, and a direct loan of that amount was then made by the latter bank to the former, and the bonds in question were pledged as collateral security for such loan. The proceeds of such loan was credited, on July 31, 1874, by the Merchants' Exchange National Bank to the Fishkill National Bank, and went to pay up the indebtedness of the last named bank to the former.

The bonds in question remained in possession of the Merchants' Exchange National Bank, as security for the loan made by that bank to the National Bank of Fishkill, until about June 7, 1875, when the last of said loan was paid, and the bonds were taken by Bartow to the banking house of Wilmerding, Duer & Co., and pledged with that firm as security for the account of the National Bank of Fishkill with them. Subsequently, the bonds were sold by them, and the proceeds applied on the account due from the bank.

The National Bank of Fishkill failed about January 7, 1877, and soon thereafter passed into the hands of a receiver.

Before the commencement of this action, the plaintiff demanded the bonds in question from the bank, and also from the receiver.

*C. Wheaton*, for the appellants.

*William S. Eno*, for the respondent.

GILBERT, J. :

Upon the facts of this case, we have no doubt that the National Bank of Fishkill would be liable in an action for money had and received for the sum which it received on account of the plaintiff's bonds. Its liability in an action of trover for the conversion of the bonds is not so clear ; still an amendment, changing the action into one upon contract, cannot be made. (Code of Civ. Proc., § 723, 4 Wait's Pr. 667.) The question then is, can the action of trover be maintained ?

A corporation is liable for the torts of its officers and agents, committed while acting within the scope of their employment, or while engaged in performing the duties devolved upon them thereby. The law governing the relation of master and servant applies as well to corporations as to individuals. The circumstances, that would render a natural person liable for the torts of an agent, impose the same liability when the principal is a corporation. These principles are well settled, and very familiar. Difficulty in applying them sometimes arises from an uncertainty whether the act of the agent was within the scope of his employment. In order to bind a principal for a criminal act of his servant, there must be evidence of authority to do the particular act. The authority will not be inferred from the existence of any general power which is not comprehensive enough to embrace the specific act. On the contrary, the principal is entitled to the presumption in favor of innocence, as a shield against liability for crimes committed by his agent. But the principal may ratify the criminal act of his agent, and such ratification is equivalent to a prior command.

In the case before us, the cashier of the defendant bank embezzled certain United States bonds belonging to the plaintiff,

and pledged them as security for moneys which he borrowed for said bank. Such embezzlement certainly was not within the authority, express or implied, of the cashier. Conceding that an authority to borrow money for the bank may be implied from the nature of the cashier's employment, and his acts done under it, yet an act of embezzlement is quite foreign to such an authority. The authority to borrow would embrace all necessary and proper means to accomplish that object; but the stealing of another's securities, to pledge for that purpose, is not usual or proper, and is not, therefore, within the authority conferred, but is an act altogether beyond the scope of the cashier's employment. If the case stopped here, no liability could be cast upon the bank. But the bank received the money borrowed, by means of the pledge of the bonds, and still retains such moneys. Such acts, we think, must operate as a ratification of the cashier's embezzlement. It is true, indeed, that no one connected with the bank, except the cashier, had any knowledge that the money so received had been obtained by means of a pledge of the plaintiff's bonds. Still the receiving of money was strictly within the scope of the cashier's employment, and his knowledge will be imputed to the bank under the settled rule that notice to the agent is notice to the principal, if the agent comes to the knowledge of the fact while he is acting for the principal, in the course of the transaction, which becomes the subject of the suit. (*Bk. U. S.* v. *Davis*, 2 Hill, 451; *Holden* v. *N. Y. and Erie Bk.*, 72 N. Y., 286.) Nor can the bank retain the money in question, and repudiate the agency by which such money was obtained, for a principal will not be permitted to avow his agent's negotiations as to part, and disavow as to the residue. (Hov. on Fraud, 144; *Bolton* v. *Hillersden*, 1 Ld. Ray., 224; *Bennett* v. *Judson*, 21 N. Y., 238; *Elwell* v. *Chamberlin*, 31 id., 611.) The set-off was properly rejected.

For the reasons stated, we think the judgment should be affirmed, with costs.

BARNARD, P. J., and PRATT, J., concurred.

Judgment affirmed, with costs.