Peckham, J.
In taking the mortgage of January, 1887, we think the university occupied the position of mortgagee for a valuable consideration. It surrendered a prior mortgage, with the accrued interest thereon, and took the mortgage in question.
If the’ university be not chargeable with notice of the prior mortgage to Constant, which was unrecorded, then its own mortgage is the prior lien as between the two.
The first important question arising is, did Dean, who acted in the transaction as the attorney and agent for the university at the time of the execution of the mortgage to the university, have knowledge of the existence of the prior mortgage to Constant, executed in February, 1883, and which he then took as agent for Constant? In other words, is there any proof that he, in January, 1884, had that fact present in his mind and recollection, so that it can, be said from the evidence that he then had knowledge of its existence as an unpaid, outstanding obligation?
The transaction, out of which the mortgage to the university arose, occurred eleven months subsequent to the transaction out of which the mortgage in suit arose; and the former mortgage was neither a part of the same trans *213 action as the latter, nor had it the least connection therewith.
Under the law, as decided by the older cases in England, such fact would have been an absolute defense to the claim that there was any constructive notice to the defendant arising out of notice to its agent, because such notice was in another and entirely separate transaction.
In Warrick v. Warrick, decided by Lord Chancellor Hardwicke in 1745 (3 Atk., 291, at 294), that able judge assumed it as unquestioned law that notice to the agent, in order to bind his principal by constructive notice, should be in the same transaction. He said, “this rule ought to be adhered to, otherwise it would make purchaser’s and mortgagee’s titles depend altogether oh the memory of their counsellors and agents, and oblige them to apply to persons of less eminence as counsel, as not being so likely to: have notice of former transactions.”
Cases were continually arising subsequent to that case wherein the principle was assumed as the law of England, although the cases did not, in their facts, absolutely call for a decision on that point.
But in Mountford v. Scott (1 Turner & Russell Chy., 274), upon an appeal from a decision of the vice-chancellor, Lord Chancellor Elden said that the vice-chancellor proceeded upon the notion that notice to a man in one transaction is not to be taken as notice to him in another transaction.
The Lord Chancellor continued: “ In that view of the case it might fail to be considered whether one transaction might not follow so close upon the other as to render it impossible to give a man credit for having forgotten it.” He further said that he would be unwilling to go so far as to say that if an attorney has notice of a transaction in the morning he shall be held in a court of equity to have forgotten it in the evening; that it must, in all cases, depend upon the circumstances.
In Hargreaves v. Rothwell, 1 Keen’s Ch. R., 154, Lord Langdale, Master of the Rolls, held that where one transaction is closely followed by and connected with another, or where it is clear that a previous transaction was present to the mind of the solicitor when engaged in another transaction, there is no ground for a distinction by which the rule, that notice to the solicitor is notice to the client, should be restricted to the same transaction. In Nixon v. Hamilton, 2 Drury & Walsh, Irish Chy. R., 364, decided in 1838, Lord Chancellor Plunket adverted to the rule as to the necessity of notice in the same transaction, and stated if it were notice acquired in the same transaction, necessarily the principal was to be charged with the knowledge of the agent; but if it were notice received by him in another transaction *214 then such notice was not to affect the principal unless ho. actually had the knowledge at the time of the second transaction. See, also, the case of Dresser v. Norwood, decided in the court of exchequer chamber and reported in 17 Com. Bench, N. S., 466.
This modification of the old English rule is recognized in the comparatively late case of The Distilled Spirits, 11 Wall., 356. Mr. Justice Bradley in delivering the opinion of the supreme court of the United States stated, that the doctrine in England seems to be established that if the agent at the time of effecting a purchase has knowledge of any prior lien, trust or fraud affecting the property, no' matter when he acquired such knowledge, his principal is affected thereby. If he acquire the knowledge when he effects the-purchase no question Can arise as to his having it at that-time. _ If he acquired it previous to the purchase, the presumption that he still retains it and has it present to his-mind will depend upon facts and other circumstances. Clear.and satisfactory proof that it was so present seems to> be the only restriction required by the English rule as now understood. And the learned justice states that the rule as finally settled by the English courts is, in his judgment, the true one, and is deduced from the best consideration of the reasons on which it is founded. In- this opinion the whole court concurred.
Story in his work on Agency (sec. 140), says: “But unless notice of the facts come to the agent, while he is concerned for the principal, and in the course of the very transaction, or so near before it that the agent must be presumed to recollect it, it is not notice thereof to the principal.' For otherwise the agent might have forgotten it, and then the principal would be affected by his want of memory at the time of undertaking the agency. Notice, therefore, to the agent before the agency is bugun, or after it has terminated, will not ordinarily affect the principal.”
In Bank of the United States v. Davis (2 Hill, 451), it was held that the principal is deemed to have notice of whatever is communicated to his agent while acting as such in a transaction to which the communication relates. And it was held in that case that notice to a bank director, or knowledge obtained by him while not engaged officially in "the business of the bank, would be inoperative as notice to the bank.
In Holden v. New York and Erie Bank (72 N. Y., 286), the rule was explained, and it was therein held that where an agency was, in its nature, continuous, and made up of a long series of transactions of the same general character, the knowledge acquired by the agent in one or more of the transactions is to be charged as the knowledge of the principal, and will affect the principal in any other transaction in which the agent as such is engaged, and in which the: *215 knowledge is material. In that case it will be seen, upon reading the very able opinion of Folger, Ch. J., that there was no question as to the knowledge of the agent of the various facts, and the only question raised was whether it should be imputed to his various principals in the transactions.
In Cragie v. Hadley (99 N. Y., 131), the doctrine that the knowledge of the agent should come to him in the identical transaction was alluded to, and it was held that it was not necessary in all cases that the notice should be thus given, and that notice to an agent of a bank entrusted with the management of its business was notice to the corporation in transactions conducted by such agent acting for the corporation in the scope of his authority, whether the knowledge of the agent was acquired in the course of a particular dealing or on some prior occasion. See, also, Welsh v. German-American Bank (73 N. Y., 424); The Atlantic State Bank, etc., v. Savery (82 id., 291).
From all these various cases it will be seen that the farthest that has been gone in the way of holding a principal chargeable with knowledge of facts communicated to his agent, where the notice was not received or the knowledge obtained, in the very transaction in question, has been to hold the principal chargeable upon clear proof that the knowledge which the agent once had, and which he had obtained in another transaction at another time and for another principal, was present to his mind at the very time of the transaction in question. Upon a careful review of the testimony in this casa wo have been unable to find any such proof. It is true tho learned trial judge finds that contemporaneously with tho execution of the mortgage to the university, Dean caused to be made a statement, upon the basis that the amount was to be loaned to the mort gagors, and that out of the money coming to them as a consideration for the mortgage to tho university, the amount of the bond and mortgage to the plaintiff’s decedent, with interest, was to be" paid and that mortgage was to be satisfied.
And he further found that the university, through Dean, had notice of tho mortgage of the plaintiff’s decedent in connection with, and as part of any proposed transaction, by which there was to be loaned to the mortgagor, the amount of the bond and mortgage to the university. What is meant by the word “ contemporaneously, ” as used in this finding, is perhaps, not absolutely clear. If it meant that the statement mentioned was procured to be made by Dean as a part of and coincident with the execution of the mortgage to the university, it is not, as we think, based upon any evidence. There is no proof whatever in this case that *216 Dean procured, this statement to be made by anybody; and Dean himself says that a statement of this nature would,, by the course of practice in his office, have come to him (made by some one in his office), the day after the loan was. closed. He does not pretend to recollect this particular statement, nor is there any evidence that he procured it to be-, made. His testimony shows that he had no special recollection of the things which took place upon the occasion of the execution of the bond and mortgage to the university, further than appeared by his books and other memoranda, then made by others; and he does not pretend to say that this particular statement was presented to him, or that he had the least knowledge of its existence, or of the facts therein stated, until the day after the closing of the transaction and the execution of the mortgage to the university.
This is every particle of evidence that there is upon which a finding could be based, such as the learned judge made, of knowledge or notice on the part of Dean, of the existence of the Constant mortgage, at the time of the transaction with the university, and the execution of the mortgage-to it.
The other facts in the case uncoptradicted are, that for some years prior to January, 1884, Dean and the plaintiff’s decedent were acting together, and that the plaintiff’s decedent was weekly and even almost daily in the habit of investing large amounts of money upon • mortgages of this nature, and that the dealings of plaintiff’s decedent in these various building mortgages, through Dean’s office, bad amounted at the time of the mortgage to the university, in the aggregate to three millions of dollars, if not more; that the mortgages were of all sizes, from six up to forty thousand dollars. It also appears that this very mortgage in suit, was found after the' execution of the university mortgage, in a pigeon hole, in which satisfied mortgages were kept, and was found by the assignee of Dean after the assignment was made.
There is no proof in the case showing that Dean made any pretense of remembering at the time of the execution: of the mortgage to the university that, eleven months before, be had taken a mortgage on the same property for the plaintiff’s decedent, which was not recorded. Taking into-consideration the enormous amount of business done by Dean for Constant, of this same general nature, and the length of time that elapsed since the taking of the Constant mortgage by him, and the fact that it was never taken from the office by the mortgagee, and that it remained there and was found in a pigeon hole appropriated to satisfied mortgages, and that on the very statement in question, upon which the learned judge evidently based his finding, it is *217 alluded to as satisfied—all these facts would tend to show very strongly that Dean had no recollection whatever of the existence of the Constant mortgage, as an existing lien at the time he took the mortgage to the university.
But the burden is upon the plaintiff to prove, clearly and beyond question, that he did, and it is not upon the defendant to show that he did not have such recollection. And we think that there is a total lack of evidence in the case which would sustain the finding that Dean had the least recollection on the subject at the time of the execution of the university mortgage.
Under such circumstances we think it impossible to impute notice to the university, or knowledge in regard to a fact which is not proved to have been possessed by its agent. If such knowledge did not exist in Dean at the time of his taking the mortgage to the university, then the latter is a bona fide mortgagee for value, and its mortgage should be regarded as a prior lien to that of the unrecorded mortgage of Constant, which is prior in point of date.
The plaintiff is bound to show by clear and satisfactory ■evidence that when this mortgage to the university was taken by Dean, he then had knowledge, and the fact was then present to his mind, not only that he had taken a mortgage to Constant eleven months prior thereto on the same premises, which had not been recorded, but that such mortgage was an existing and valid lien upon the premises, which had not been in any manner satisfied. If he recollected that there had been such a mortgage but honestly believed that it was or had been satisfied, then, although mistaken upon that point, the university could not be charged with knowledge of the existence of such mortgage.
Quite a strong reason for riot imputing knowledge to the agent in this case, unless upon evidence clear and satisfactory, is that if he had such knowledge and thus knowingly took an utterly worthless security for his principal, he acted in the most improper and dishonest manner, and willfully caused a loss to his principal of substantially the whole amount of the money represented by the mortgage which he took as a second lien. While this consideration is not controlling if the evidence justified the assumption, it is yet of considerable weight, and adds to the propriety of the rule requiring clear proof of such knowledge at the very time of taking the mortgage to the university.
One other question has been argued before us which has been the subject of a good deal of thought. It is this: Assuming that Dean had knowledge of the existence of the Constant mortgage at the time of the execution of the mort *218 gage to the university, is his knowledge to be imputed to the university, considering the position Dean occupied to both mortgagees?
While acting as the agent of Constant in taking the mortgage in question as security for the funds which he was investing for him, it was the duty of Dean to see that the' moneys were safely and securely invested. The value of' the property in question was between eleven and twelve thousand dollars; and it was obviously the duty of Dean to' see to it that the mortgage which he took upon such property as a security for a loan of $6,000 for Constant should be a first lien thereon. See Whitney v. Martine, 88 N. Y., 535.
In order to become such first lien it was the duty of Dean to see to it that the Constant mortgage was first recorded. In January, 1884, when acting as agent for the university to' invest its moneys, he owed the same duty to the university that he did to Constant, and it was his business to see to it that the security which he took was a safe and secure one. Neither mortgage was safe or secure if it were a subsequent lien to the other upon this property. This duty he continued to owe to Constant at the time he took the mortgage to the university.
At the time of the execution of the latter mortgage, therefore, he owed conflicting duties to Constant and to the university, the duty in each case being to make the mortgage to each principal a first lien on the property. Owing these conflicting duties to two different principals, in twu separate transactions, can it be properly said that any knowledge coming to him in the course of either transaction should be imputed to his principal? Can any agent occupying such a position bind either principal by constructive notice, where confessedly that is all the notice that each principal had? It has been stated that in such a case where an agent thus owes conflicting duties, the security which is taken or the act which is performed by the agent may be repudiated by his principal, when he becomes aware of the position occupied by such agent. Story on Agency, § 210.
The reason for this rule is that the principal has the right to the best efforts of his agent in the transaction of the business connected with his agency, and where the agent owes conflicting duties he cannot give that which the principal has the right to demand, and which he has impliedly contracted to give.
Ought the university to be charged with notice of the existence of this prior mortgage when it was the duty of its agent to procure for it a first lien, while at the same time in his capacity as agent for Constant it was equally his duty to give to him the prior lien? Which principal should he serve? There have been cases where in the sale and purchase of the same real estate both parties have employed the same agent, and it has been held under such *219 circumstances that the knowledge of the agent was to be imputed to both of his principals. If with a full knowledge of the facts that the agent was the common agent of both, each principal employed him, we can see that there would be propriety in so holding; for each then notes the position which the agent has with regard to the other, and each takes the risks of having imputed to him whatever knowledge the agent may have on the subject.
See LeNeve v. LeNeve (Ambler’s Rep., 436), Hardwick chancellor, decided in 1747; Toulmin v. Steere (3 Merivale Chy., 209), decided in 1817 by Sir Walter Grant, master of the rolls.
The case of Nixon v. Hamilton, already referred to, decided by Lord Plunket, lord chancellor in the Irish court of chancery in 1838 (2 Drury & Walsh, 364), is a case in many respects somewhat like the one at bar, so far as the principal is concerned, if it be assumed that Dean really had the knowledge of the prior mortgage as an existing lien. It will be observed, however, upon examination of it, that the question of whether the knowledge of the common agent in two different transactions with two different principals was notice to the second principal was not raised with reference to this particular ground. The whole discussion was upon the subject of imputing the knowledge of the agent to the second mortgagee of the existence of the prior mortgage not derived in the latter transaction. Whether such knowledge should or should not be imputed to the second mortgagee because of the conflicting duties owed by the common agent was not raised. The defense was that the information did not come to the agent of the second mortgagee in the course of transacting the business of the second mortgagee, and the question was simply whether such knowledge could be imputed to the second mortgagee because of the knowledge acquired by his agent at another time, in another transaction, with another principal.
The court held that where it appeared, as in this case it did appear, fully and plainly, that the matter was fresh in the recollection and fully within the knowledge of the agent-, and under such circumstances that it was a gross fraud on the part of the agent, in the first place in keeping a prior mortgage off the record, and in the second place in not communicating the knowledge which he had to his principal, the second mortgagee, that in such case the second mortgagee was charged with the knowledge of his agent.
The distinct ground taken was that, although the agent’s knowledge was acquired in another anda prior transaction, and with another principal, still, as he had the knowledge, *220 he was bound to impart it to his principal, and he was guilty of a fraud in concealing it, for which his principal must suffer.
Whether the same result would have been reached if the other ground had been argued, we cannot of course assume to decide.
I have found no case precisely in point where the subject has been discussed and decided either way. I hare very grave doubts as to the propriety of holding in this case of an agent situated as I have stated, that his principal in the second mortgage should be charged with knowledge which he acquired in another transaction, at a different time, while in the employment of a different principal, and where his duties to such principal still existed and conflicted with his duty to his second principal. We do not-deem it, however, necessary to decide the question in this case.
Dor the reasons already given, the judgment should he reversed and a new trial ordered, with costs to abide the-event.
All concur except Gray, J., who reads for affirmance,, and Andrews, J., concurs.