57 425
74 271

## Samuel C. Bartlett, William H. Bartlett and Frank P. Frazier v. The Woodbine Savings Bank.

1. NOTICE—*Corporation*—*Notice to Director.*—Notice to a director of a corporation, while engaged in its business, such notice being concerning the business he is engaged upon, is notice to the corporation.

2. SAME—*Banks*—*Notice to President.*—Whenever information is given to the president of a bank for the purpose of transmission through him to his bank, the law will regard the information as having been transmitted to the bank, whether the president in fact does so or not.

**Memorandum.**—Assumpsit for money had and received. Appeal from the Circuit Court; the Hon. FRANK BAKER, Judge, presiding. Heard in this court at the October term, 1894. Reversed and remanded. Opinion filed February 12, 1895.

### STATEMENT OF THE CASE.

This was an action of assumpsit for money had and received.

The ground of the action is, that money fraudulently obtained from appellants, was deposited by the wrongdoer in defendant's bank, and paid by it to his order, with notice of the fraud.

The equities of appellants as against the depositor are not disputed, the only controversy being as to whether the bank, when it parted with the money, was chargeable with notice of such equities.

Upon the trial the court directed the jury to find for the

defendant, which they did, and judgment was entered on the verdict, from which plaintiffs appeal.

At the time of the transaction in question, appellants were grain dealers in Chicago, and one Sidney L. Winter was engaged in the same business at Woodbine, Iowa, buying grain at that place and shipping it to Chicago and other eastern points, while appellee was doing a banking business at Woodbine.

In November, 1891, Winter deposited in appellee's bank for collection, certain drafts, among them being a draft on appellants for $600. The draft on appellants was duly forwarded by appellee to its Chicago correspondent. When paid, notice to that effect was sent to appellee by the Chicago bank, and the proceeds were credited to Mrs. Minnie M. Winter, wife of the drawer, in accordance with his instructions given at the time the draft was deposited.

The draft, it appears, was honored by appellants on the faith of certain forged bills of lading purporting to have been issued for certain cars of grain, against which the draft in question was drawn.

These bills of lading, however, did not accompany the draft. They were sent directly to the drawees by Winter himself, and not through the bank, which had no knowledge of their existence until after it had parted with the money.

Several drafts were deposited with appellee between October 31st and the 9th of November, that drawn on appellants having been brought in on the slip. Winter absconded on the 10th and has not returned. On the morning of the 16th letters addressed to him from appellants and others, saying that certain grain which he professed to have shipped had not been received, and requesting that tracers be sent out, were opened and read by Mrs. Winter. Between the hours of eight and nine o'clock that morning, she called upon one H. M. Bostwick, cashier of the First National Bank of Woodbine, Iowa, and asked him what business matters Mr. Winter had left with him before he went away, exhibiting to him the letters in question.

Some time between nine and ten o'clock, Mr. Bostwick went with her and Mr. Kibler, president of the defendant bank, to the depot to examine into the matter.    Mr. Kibler was her relative.    The station agent, after looking through the letters, requested Mrs. Winter to leave them, promising to report to her later in the day in regard to the grain shipments.

As she turned to go out, he called Messrs. Kibler and Bostwick back.    When she got out of the door, he told them that none of the grain inquired about had ever been shipped from Woodbine by Mr. Winter, and that the whole thing was a fraud.    Having a little delicacy about telling her that her husband was a defaulter, he requested Mr. Kibler, inasmuch as he was a relative of hers, to tell her the truth.

On the same morning, after leaving the depot, Mr. Bostwick had a conversation with Mr. Kibler, in which the latter said he had acquainted Mrs. Winter with all that they had learned from the station agent at the depot.

Immediately after noon upon the same day, Mrs. Winter went to the bank with her father, Stephen King, and presented a check for the full amount of her balance, $1,719.71, which was paid.

The cashier who paid her check swears that he had then no suspicion of the fraud.    He also testified:    " My duties of cashier are the management of the bank.    No one else collects drafts.    No one else disburses the money of the bank.    Mr. Kibler usually comes in the bank once a day, perhaps once in two days.    He deposits for the account of Kibler Bros.    He gets no salary as a bank official.    He has nothing to do with its actual managment."

Appellants' Brief, Reed, Brown & Allen, Attorneys.

Whenever information is given to a president for the purpose of transmission through him to his bank, the law will regard the information as having been transmitted, whether the president has done so or not.    Bolles on Bank Officers, Sec. 351.

And this is so even if the full circumstances are not communicated, providing there is enough to be put on inquiry. Porter v. Bank of Rutland, 19 Vt. 410; Blaisdell v. Stevens, 16 Vt. 179; Anderson v. Van Allen, 12 Johns. (N. Y.) 344.

The law is clear that when the knowledge is communicated to the president in his official capacity, it may be imputed to the bank. Ottaquechee Savings Bank v. Holt, 58 Vt. 166; Dows v. Kidder, 84 N. Y. 121; Eastman v. Cohoes Bk., 1 N. H. 23; Village Port Jervis v. 1st Natl. Bank, 96 N. Y. 550; Getman v. Second Nat. Bk., 23 Hun 493.

Boone, in his work on Banking, at Sec. 133 says:

Generally speaking, notice to the president of a bank, pertaining to any transaction to which the bank is a party, is notice to the bank, and this has been carried so far, that where the president is the only officer who has acquired the knowledge, and during his accidental absence from the bank other officers, who are actually without the knowledge, fail to act upon it, this offers no legal excuse to the bank. Central Bank v. Levin, 16 Mo. App. 543.


APPELLEE'S BRIEF, MONK & ELLIOTT, ATTORNEYS.

When an agent himself is personally charged with fraud, notice to the principal through such agent can not be presumed, for it is to the interest of the agent to conceal the facts from his principal. Cave v. Cave, L. R. 15 Ch. 639.

Knowledge of a president in regard to the title to property which he sells to the company is not notice to it. Barnes v. Trenton, etc., Co., 27 N. J. Eq. 33.

A bank is not chargeable with notice to its president of a defense to notes of a cattle company presented to the bank by its president, but in behalf of a cattle company. Korkoran v. Snow Cattle Company, 151 Mass. 74.

Knowledge of the president in regard to outstanding equities to land, mortgaged by him to the corporation, is not notice to the company. Winchester v. Railroad Company, 4 Md. 239.

MR. PRESIDING JUSTICE WATERMAN DELIVERED THE OPINION OF THE COURT.

In this case it appears that Sidney L. Winter, having by lying, forging and swindling, obtained from various parties large sums of money, absconded. About $1,800 of the funds thus obtained he deposited to the credit of his wife with the Woodbine Savings Bank; $600 of this money, Winter had by the means above described obtained from appellants.

On the morning of the 16th of November, the president of the bank, a relative of Mrs. Winter, was, in connection with the cashier of another bank, informed of what Mr. Winter had done, and being requested so to do, told Mrs. Winter. Notice to a director of a corporation, while engaged in its business, such notice being concerning the business he is engaged upon, is notice to the corporation. Angell and Ames on Corporations, Sec. 306; Bank of United States v. Davis, 2 Hill 451–461.

Bolles upon Bank Officers, Sec. 351, says:

" Whenever information is given to a president for the purpose of transmission through him to his bank, the law will regard the information as having been transmitted, whether the president has done so or not."

There was evidence tending to show that the knowledge of the fraud given to Kibler was communicated to him for the purpose of thus giving information to the bank. And there was also evidence tending to show that Kibler received this information as the president of the bank, and in an inquiry made by him and the cashier of another bank, as to the character of the transactions through which Winter had obtained funds to deposit in the banks of Woodbine; Mr. Kibler did not testify, and there is no explanation of how he, in connection with an officer of another bank, came to seek out and obtain this information, unless he did so because of his being the chief officer of appellee.

Knowledge communicated to the president of a bank in his official capacity may be imputed to the bank. Ottaquechee Savings Bank v. Holt, 58 Vt. 166; Village of Port Jervis v. First Nat'l Bank, 96 N. Y. 550; Holden v. N. Y. &

Erie Bank, 72 N. Y. 286–294; Bank of the United States v. Davis, 2 Hill 451–461.

The jury should not have been instructed to find for the defendant. It should have been left to them to say, whether, at the time the bank paid to Mrs. Winter's father the check made by her, it had notice that the funds thus by it paid had been obtained by Mr. Winter in such a manner that he had no right to them or to deposit them to the credit of his wife. The judgment of the Circuit Court is reversed and the cause remanded.