In the Matter of the Estate of WILLIAM McINTYRE, Deceased.

Surrogate's Court, Queens County, April 28, 1936.

*Van Ness & Van Ness,* for the petitioner, Willis McIntyre.

*Frederick H. Patterson,* for the respondent-trustee, Fifth Avenue Bank of New York.

HETHERINGTON, S. The testator in the eighth paragraph of his will provided in part as follows: " I give and bequeath to the Fifth Avenue Bank of New York, located on Fifth Avenue, Borough of Manhattan, City of New York and its successors, the sum of Twelve Thousand Dollars ($12,000) out of my estate, in trust, nevertheless, to invest the same and keep the same invested and to pay the net income, issues and profits of such investments semi-annually to and for the use of my brother, John W. McIntyre, during his life and upon his death, I give and bequeath said trust fund to his sons, Alexander McIntyre, Walter McIntyre, and Willis McIntyre, in equal portions share and share alike * * * In making investments under the foregoing trust I direct that my Trustee shall be limited to investments in which under the laws of the State of New York a trustee may invest trust funds, except in the case of bonds and mortgages fully guaranteed by seasoned and responsible corporations approved by my said Trustee or its successor."

On November 7, 1930, respondent, as trustee, invested the fund by purchasing from itself a participation of $12,000 in a bond of $25,000 maturing November 7, 1935, bearing interest at six per cent per annum secured by a first mortgage on real estate located at East Hampton, Suffolk county, N. Y.

The life beneficiary of the trust died on July 6, 1932, survived by his three sons, Alexander, Walter and Willis, and at which time the latter was an infant of seventeen years of age.

On August 5, 1933, a principal payment of $1 000 was made on the bond and mortgage. On April 15, 1935, the adult remainder-men and petitioner's mother, as his general guardian, signed separate

but identical letters addressed to the respondent approving an extension of the aforesaid mortgage " for two years at 4% providing a payment of $4,000 is made on account of principal and all the back interest is paid at the rate of 4% and also the taxes." It appears that the respondent received the payment of $4,000, and although the letters of approval authorized an extension of payment for two years, the maturity was extended only to May, 1936. In its answer respondent states the share of petitioner in principal and interest payments was " held in the custody account and on August 20, 1935, the date on which he attained his majority, all amounts so held in the custody account both of principal and interest receipts were transferred to Willis McIntyre." On August 20, 1935, the day upon which petitioner became of age, he signed at the office of the respondent a paper writing purporting to be a " receipt and release " in which he acknowledged the receipt of $843.24 in full payment of his distributive share of the income and principal in said trust fund, and therein released the respondent " from any and all responsibility and accountability to me in respect to the payment aforesaid." On November 22, 1935, petitioner commenced this proceeding to compel payment by the trustee of his share of the balance of the trust fund. Respondent, although willing to execute and deliver to petitioner an assignment of his interest in the participation, resists payment in cash, claiming that the investment was a proper one, and even if questionable, was ratified by the petitioner.

Under the terms of the will the trustee could not invest the fund in bonds and mortgages unless they were fully guaranteed by seasoned and responsible corporations approved by it. The record fails to show that the trustee procured a guaranty of payment as directed by the testator. With respect to the investment here made, the will, not the statute, was the trustee's guide. Having elected to disregard the provisions of the will, the trustee must assume the loss and respond to the petitioner for his share of the fund improperly invested (*Holden* v. *N. Y. & Erie Bank*, 72 N. Y. 286; *Adair* v. *Brimmer*, 74 id. 539; *King* v. *Talbot*, 40 id. 76), unless its claim that the petitioner ratified the investment and released it from liability can be sustained.

In support of the claimed ratification, respondent submits an affidavit of its assistant cashier stating that on August 20, 1935, *the day upon which petitioner became of age,* he came by appointment to the office of the bank " for the expressed purpose of receiving such moneys of the trust fund as he had then become qualified to receive in person," that ledger sheets and statements

showing the trustee's account in full were submitted to him, and that he " then and there fully examined the account and fully approved of same." Then, with a view of convincing the court that petitioner, who had just attained his majority, was dealing on an equal basis with the respondent, a corporation with extensive experience and special knowledge in trust matters, the affidavit proceeds to state that " Mr. McIntyre whom deponent understands has had some banking experience, was apparently quite able and qualified to understand the said account." The account referred to has not been submitted on this application. The affidavit concludes by stating that, after petitioner had examined the account, and read the receipt and " ratification " which the respondent insisted should be signed before it would turn over the moneys requested by him, he signed and acknowledged the paper relied upon. Except for certain preliminary and immaterial recitals, the instrument signed and acknowledged by the petitioner provides as follows:

" WHEREAS, the Trustee has submitted to me the said Willis McIntyre, a full statement of its account as such trustee and same has been and is fully approved by me the said Willis McIntyre, by which statement there appears to be due to me for my share of accumulated income $552.08 and principal $291.16, making a total of $843.24.

" *Now, Therefore*, I the said Willis McIntyre, do hereby acknowledge receipt this 20th day of August, 1935, of the sum of $843.24 in full payment of my distributive share of the income and principal in said trust fund.

" I do hereby for myself, my executors, administrators, legal representatives and assigns, remise, release and forever discharge said Fifth Avenue Bank of New York as said Trustee, from any and all responsibility and accountability to me in respect to the payment aforesaid."

Even if the proof submitted by the respondent were uncontradicted, my opinion is that it has failed to establish ratification tested by the rule laid down in *Adair* v. *Brimmer* (*supra*), where RAPALLO, J. said (at p. 554):

" To establish a ratification by a *cestui que trust*, the fact must not only be clearly proved, but it must be shown that the ratification was made with a full knowledge of all the material particulars and circumstances, and also in case like the present, that the *cestui que trust* was fully apprised of the effect of the acts ratified, and of his or her legal rights in the matter. Confirmation and ratification imply to legal minds, knowledge of a defect in the act to be confirmed, and of the right to reject or ratify it. The *cestui que trust* must therefore not only have been acquainted with the

facts, but apprised of the law, how these facts would be dealt with by a court of equity. All that is implied in the act of ratification, when set up in equity by a trustee against his *cestui que trust*, must be proved, and will not be assumed. * * *

" The *cestui que trust* must be shown to have been apprised of his legal rights."

Here the act sought to be ratified was the making of the investment, the subject of this controversy. Before seeking ratification respondent was bound to disclose to the petitioner the provisions of the will, the nature of the investment, the possibility of its propriety being questioned, the right to reject or ratify it as well as the effect of a release or discharge given at the time. The respondent's papers fail to show that it made a full and frank disclosure of the material facts and circumstances surrounding or relating to this investment. The failure to so inform the petitioner is an obstacle to holding that the so-called instrument of release operated as a ratification. The instrument by its terms is merely a receipt and release of liability for a particular payment. The recital preceding the acknowledgment of payment that a full statement of its account had been submitted to and approved by the petitioner does not justify the conclusion that the respondent made known to petitioner all the facts relating to the investment. In the absence of the submission of the account referred to, the court has no knowledge as to whether it contained any more information than that disclosed in the release. The failure to mention the investment in the release impresses me as significant. It is unreasonable to assume that, if petitioner ratified the investment as claimed, respondent would have failed to incorporate an express statement to that effect in the instrument. The omission to do so lends corroboration to petitioner's version of what occurred prior to and upon the day it was executed. He states that a day before he came of age he went to the office of respondent's attorney, who exhibited to him " a long instrument of five or six pages referring to the mortgage certificate on the Bishop property," which petitioner states that he declined to sign. On the following day he appeared at the bank where he met the attorney and Mr. DeWitt, respondent's assistant cashier. That at this conference DeWitt was advised by respondent's attorney that petitioner would not sign " any receipt or paper concerning the mortgage certificate," that DeWitt then stated that the attorney should submit to petitioner " a receipt merely for the $843.24." That although respondent sought to induce him to sign " some sort of general statement concerning the trusts, its management, assets, etc.," and recording his approval, he expressly declined to do so.

The proof submitted by the petitioner convinces me that not only was there no ratification but that petitioner expressly declined to approve the investment. His failure to do so explains the absence of an express ratification in the instrument. Mindful of the fact that the instrument was prepared by the respondent or its attorney, the court repeats it is difficult to believe that respondent, with its extensive experience in the administration of trust estates and with counsel present, would be so imprudent as to neglect to incorporate such an essential statement in the release, if, in fact, approval had been given. In conclusion, it might be said that the act of petitioner's guardian in consenting to an extension of the time of payment beyond his majority was not binding on him and did not work a ratification. (*Ide* v. *Brown*, 178 N. Y. 27.) The petitioner is entitled to a decree directing the respondent to pay over to him in cash his share of the trust fund with interest less any payments heretofore made. Submit decree accordingly on notice.